Michael W. GORDON, Appellant,

v.

ALASKA PACIFIC BANCORPORATION
and Alaska Pacific Mortgage
Company, Appellees.

No. S–1905.

Supreme Court of Alaska.

April 7, 1988.

Blaine D. Gilman, Boyko, Davis & Dennis, Anchorage, for appellant.

Barry J. Kell and John C. Dittman, Richmond & Quinn, Anchorage, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

Alaska Pacific Mortgage Company sponsored a party for its customers. Some four hundred invited guests rode a train from Anchorage to Snyder Park in Wasilla for a dance. Alaska Pacific provided free champagne, wine and beer on the train and at the park.

Michael Gordon[1] was a party guest. Following the dance, as he was walking back to the train, he observed a fight between James Geleszinski and Jim Irvine.[2] Gordon intervened, pulled Geleszinski off Irvine, and held him.

Randy Boyd, an executive vice president of Alaska Pacific, arrived and asked Gordon to release Geleszinski. Gordon complied. Boyd walked Geleszinski ten to fifteen feet away from Gordon, then released him. According to Boyd, Geleszinski appeared calm at the time.

In the meantime, Geleszinski's friend Robin Varner began screaming and threatening Gordon. Gordon testified that everyone was getting excited and it seemed like "a small little riot was about to occur." Fearing an imminent attack, Gordon punched Varner in the face, and broke his own hand. Boyd approached the combatants (having already released Geleszinski), and walked Varner a short distance from the area. Then Geleszinski approached Gordon from the side or rear and punched him in the nose, breaking it and knocking him unconscious.[3]

Gordon sued Alaska Pacific for damages, claiming that his injuries resulted from Alaska Pacific's negligent performance of its duty to provide security for his safety and Boyd's negligent undertaking to protect him.[4] The superior court entered summary judgment for Alaska Pacific. Gordon appeals.

## I. DUTY TO PROVIDE SECURITY

Gordon's first argument is that Alaska Pacific had a duty to use reasonable care to provide adequate security at Snyder Park to protect its guests. The Restatement (Second) of Torts § 344 (1965) states:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

---

1. Because Gordon appeals from a summary judgment, the statement reflects his version of the disputed facts. *See Swenson Trucking & Excavating v. Truckweld Equip. Co.*, 604 P.2d 1113, 1116 (Alaska 1980).

2. Geleszinski believed that Irvine had been "forward" with Geleszinski's wife at the dance.

3. Geleszinski testified that he hit Gordon in defense of Geleszinski's friend Varner. At the

time, Geleszinski did not know that it was Gordon who had intervened in his fight with Irvine.

4. Gordon also sued Alaska Pacific Bancorporation, the parent corporation of Alaska Pacific Mortgage Co. The analysis pertaining to both is the same.

Gordon asserted battery and negligence claims against Geleszinski as well. Those claims were dismissed with prejudice by stipulation of the parties.

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

The duty of reasonable care includes a duty to provide security forces on premises when necessary to protect the public from foreseeable harm.

> Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. *If the* place or *character of his business,* or his past experience, *is such that he should reasonably anticipate careless or criminal conduct on the part of third persons,* either generally or at some particular time, *he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.*

*Id.* comment f (emphasis added). *See Ollison v. Weinberg Racing Ass'n,* 688 P.2d 847, 849–52 (Or.App.1984); *see also Carlson v. State,* 598 P.2d 969 (Alaska 1979) (landowner has duty of reasonable care to maintain property in reasonably safe physical condition); *Webb v. City and Borough of Sitka,* 561 P.2d 731 (Alaska 1977).

Alaska Pacific does not argue that it was not a possessor of Snyder Park when it hosted the party there. In our view a jury question is presented as to whether Alaska Pacific should have reasonably anticipated altercations among its guests. If the answer to that question is in the affirmative, the jury could find that Alaska Pacific failed to take reasonable precautions which would have prevented harm to Gordon.

The jury could find a duty to anticipate outbreaks of violence on the following facts. There was a large crowd of people to whom large quantities of free liquor were given. No effort was made to limit dispensation of alcohol to those apparently sober. One of the activities was a dance, where jealousies, proposals for sexual transactions, and social slights might play a motivational role.

■ Alaska Pacific argues that AS 04.-21.020 relieves it of liability to Gordon.[5] That section exempts from civil liability a person who does not hold a liquor license who furnishes liquor to an intoxicated person who, as a result of his intoxication, injures a third party. This is in general accordance with the majority rule at common law. *Fruit v. Schreiner,* 502 P.2d 133, 142–43 (Alaska 1972) (rule recognized, but not explicitly adopted or followed). We conclude that the rule of exemption has no application to this case. Gordon's claim is not that Alaska Pacific is liable because it served people who were intoxicated. His claim is that Alaska Pacific had a duty to provide protection, knowing, among other things, that intoxicated people would be on the premises. The source of the intoxicants is not critical to this theory. *See D'Amico v. Christie,* 518 N.E.2d 896, 899–900 (N.Y.1987).

## II. UNDERTAKING TO PROTECT

■ Gordon also argues that Boyd had a duty of reasonable care because Boyd undertook to protect him from Geleszinski. If Boyd breached this duty, Alaska Pacific is liable for Gordon's injuries under the doctrine of respondeat superior. Alaska Pacific contends that Boyd did not undertake to protect Gordon. The trial court apparently ruled that Boyd did undertake to break up the fight, but concluded that he exercised reasonable care as a matter of law.

---

5. AS 04.21.020 provides in part:
  A person who provides alcoholic beverages to another person may not be held civilly liable for injuries resulting from the intoxication of that person unless the person who provides the alcoholic beverages holds a license authorized under AS 04.11.080—04.11.-220. . . .

Even though one person is otherwise under no duty to another, if he voluntarily undertakes to protect the other he may be liable for his negligence in doing so.

The Restatement (Second) of Torts § 323 (1965) imposes liability on a defendant that negligently performs an undertaking to render services:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

We have relied on this principle to establish a duty of care in a variety of factual situations. For example, a city which undertakes to provide police protection to its residents has a duty to exercise reasonable care in providing those services. *City of Kotzebue v. McLean*, 702 P.2d 1309, 1312–13 (Alaska 1985). Similarly, a defendant that voluntarily supplies a ladder for access between a tugboat and a dock is under a duty to exercise some degree of care toward those using the ladder. *Williams v. Municipality of Anchorage*, 633 P.2d 248, 251 (Alaska 1981). Finally, if the state voluntarily conducts building fire safety inspections, it must exercise reasonable care in conducting the inspection and abating known fire hazards. *Adams v. State*, 555 P.2d 235, 240–41 (Alaska 1976). However, evidence that the undertaking is for the plaintiff's benefit is a prerequisite to liability; a plaintiff who does not produce such evidence is not entitled to a jury instruction on this theory. *McLinn v. Kodiak Electric Ass'n*, 546 P.2d 1305, 1309 n. 8 (Alaska 1976). *Alaskan Village, Inc. v. Smalley*, 720 P.2d 945, 947 (Alaska 1986). In *Smalley* we concluded that a landlord who undertook a duty to control dogs on rented premises is liable to one injured by his negligent failure to do so. *Id.* at 948.

Gordon testified that, after he pulled Geleszinski off Irvine, he would not let Geleszinski go until someone came along, because Geleszinski was "mean." When Boyd arrived and asked Gordon to release Geleszinski, Gordon replied, "fine, but if I let him go and he hits me, we're going to have a ... problem." Gordon wanted to make sure that Geleszinski would not turn on him when Gordon let go. Gordon assumed that Boyd or other people "got a hold of" Geleszinski and led him away. He stated:

> I handed the guy over to Boyd. It was Boyd's trip, I was on Boyd's train, I was at Boyd's party. He was the president. He was told that—he took the responsibility of this guy. I turned him loose to him. I told him that if he turned him loose, we're going to have a problem.

Boyd agreed that he "took charge" of Geleszinski after Gordon let go of him; he walked him ten to fifteen feet up the road, because Boyd did not want the altercation to start all over again.

Reading this testimony in the light most favorable to Gordon, we conclude that a jury might find Boyd undertook to prevent Geleszinski from fighting. This undertaking could be found to give rise to a correlative duty to protect those with whom he would foreseeably fight. Gordon was one such person.

## III. BREACH OF DUTY TO PROTECT

■ Gordon argues that Boyd breached his duty because Boyd simply released Geleszinski fifteen feet up the road. Alaska Pacific contends that Boyd exercised due care because Geleszinski appeared calm when Boyd released him. The trial court ruled that Boyd exercised due care as a matter of law because it was undisputed that Geleszinski appeared calm when Boyd released him.

Although Geleszinski was calm when Boyd released him, this occurred within ten to fifteen feet of the site of the first fight. In contrast, after Geleszinski struck Gordon, Boyd walked him through the woods,

across an open field, across the railroad tracks and across the highway to a mini-mall, where Boyd informed Geleszinski and his wife that they were not getting back on the train to Anchorage. Moreover, Geleszinski did not struggle against Gordon's restraint, yet Gordon did not release him until someone appeared to take charge of the situation, because Gordon suspected that Geleszinski was "just playing along."

Whether particular conduct is negligent or reasonable is a question of fact for the jury, if reasonable minds could draw different inferences from the evidence presented. *Swenson Trucking*, 604 P.2d at 1118–19; *Webb v. City and Borough of Sitka*, 561 P.2d 731, 735 (Alaska 1977). We believe that reasonable minds could differ on the question whether Boyd exercised reasonable care in releasing Geleszinski so soon, and so near the scene of the struggle, despite his calm demeanor. We therefore conclude that the trial court erred in concluding that Boyd exercised due care as a matter of law.

## IV. CAUSE

 Alaska Pacific argues that neither lack of security guards nor Boyd's release of Geleszinski was a proximate cause of Gordon's injuries as a matter of law. Further, it argues that Gordon's and Geleszinski's acts are, as a matter of law, superseding causes. We conclude that there are genuine issues of material fact, and conflicting inferences which can be drawn therefrom, which precluded summary judgment on proximate cause. Further, we conclude that Gordon's and Geleszinski's acts are not superseding causes.

If there had been security guards one could have escorted Geleszinski safely away from the area of confrontation while another could have quelled the Gordon–Varner altercation. This would have prevented some of the injuries Gordon suffered. Similarly, the presence of security personnel might reasonably have obviated Gordon's intervention in the Geleszinski–Irvine altercation. Moreover, Boyd's release of Geleszinski did have as its result the attack by Geleszinski on Gordon. A jury could readily find a proximate cause relationship between these acts.

The prevention of fights, whether in self-defense or not, is one reason why security guards may be required under section 344 of the Restatement (Second) of Torts. The fact that they occur cannot therefore be regarded as a superseding cause, for they are within the scope of the foreseeable risk. *Osborne v. Russell*, 669 P.2d 550, 556–57 (Alaska 1983) (no superseding cause as a matter of law where third party conduct was within the scope of the foreseeable risk created by defendant's negligence); *Yukon Equipment v. Fireman's Fund Ins. Co.*, 585 P.2d 1206, 1211–12 (Alaska 1978); *Morris v. Farley Enter.*, 661 P.2d 167, 170 (Alaska 1983).

As to the theory that Boyd was negligent in releasing Geleszinski, the risk was that he would continue to fight. Gordon, as the person who had restrained Geleszinski, and who because of this was then involved in a fray with Geleszinski's friend Varner, was a foreseeable target. Thus, on this theory as well, Alaska Pacific's superseding cause theory fails.

REVERSED and REMANDED.