**Kathy FANCYBOY, Personal Representative of Willie Fancyboy, Deceased, and Guardian of Todd Fancyboy, a minor, and Raymond Fancyboy, Appellants and Cross–Appellees,**

v.

**ALASKA VILLAGE ELECTRIC COOPERATIVE, INC., Appellee and Cross–Appellant.**

Nos. S–8491, S–8552.

Supreme Court of Alaska.

Aug. 13, 1999.

---

Susan Orlansky and Jeffrey M. Feldman, Feldman & Orlansky, Anchorage, for Appellants and Cross–Appellees.

Donald C. Ellis, Kemppel, Huffman & Ellis, P.C., Anchorage, and Christopher R. Cooke, Hedland, Brennan, Heideman & Cooke, P.C., Bethel, for Appellee and Cross–Appellant.

Before: MATTHEWS, Chief Justice, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

This appeal involves a fire that destroyed the Fancyboy family home in Pilot Station. One of the Fancyboy children was killed in the fire and two other family members were injured. The Fancyboys sued Alaska Village

Electric Cooperative, Inc. (AVEC) for negligence. Although a jury found AVEC partially liable, allocating forty percent of fault to AVEC and sixty percent of fault to the father, Raymond Fancyboy, it only awarded the Fancyboys property damages. The trial court found that the jury's failure to award at least stipulated medical expenses was inconsistent with its finding that AVEC was partially liable. After the jury deliberated further, it rendered a second verdict that included the stipulated medical expenses.

The Fancyboys appeal, claiming that AS 09.17.080 does not permit the trial court to reduce the verdict by the percentage of fault allocated to Raymond. They further argue that the second jury verdict was inconsistent in its failure to make any award for non-economic damages. AVEC cross-appeals, arguing that the trial court erred in failing to reinstate the original verdict. Because we conclude that both the original and amended jury verdicts were inconsistent, we reverse and remand for a new trial.

## II. *FACTS AND PROCEEDINGS*

Raymond and Kathy Fancyboy and their children moved to Pilot Station in the spring of 1992. Soon after their arrival, they bought a small home next to Kathy's mother's house. When the family moved into the house, it did not have electrical service because AVEC, which provides electricity to Pilot Station, had not connected the Fancyboy home to its distribution system.[1]

Raymond claims that in early 1992 he contacted the local AVEC representative, Tom Heckman, about obtaining service for his new home. Heckman allegedly told Raymond that no one from AVEC could come to Pilot Station to install an overhead line for several months. Raymond maintains that Heckman recommended that the Fancyboys run a jump line[2] from another meter box to their house and that Raymond contact Wayne Francis, a former AVEC employee,

for assistance with this project. Heckman denies having this conversation.

Kathy's mother agreed to let the Fancyboys run a jump line from her meter box to their house until AVEC could install an overhead power line. Raymond then spliced two pieces of wire together and ran the line from his mother-in-law's house to his home, a distance of approximately seventy-five feet. In doing so, Raymond used white Romex cable, a common interior house wire that can handle only limited voltage.

Wayne Francis, who had installed jump lines before, helped Raymond by connecting the wires from the meter box at Raymond's mother-in-law's house to the Fancyboy home. Francis warned Raymond not to run too many appliances off the Romex wire. Francis also connected each end of the cable to a circuit breaker and told Raymond that the breaker would trip if the wire were overloaded. Heckman, the AVEC representative, admitted knowing that a jump line ran from Kathy's mother's house to the Fancyboy home and that the type of wire used was potentially dangerous.

After Francis completed the connection, the Fancyboy home appeared to receive enough electricity. At first, the Fancyboys needed electricity only for basic lighting, a stereo, and a television. Later in the summer, the Fancyboys bought a small refrigerator, a washing machine, and a freezer. When they used several appliances at once, the circuit breaker would occasionally trip, and Raymond would reset the breaker at his mother-in-law's house.

Pregnant with the Fancyboys' fourth child, Kathy left Pilot Station in early August to stay at the Bethel Prematernal Home. During her absence, Raymond cared for the other three children: Janan, age five; Willie, age three; and Todd, age two. On September 24, 1992, Raymond took Janan to school. On the way home with his two sons, Raymond stopped at his brother-in-law's house,

---

1. In 1991 AVEC had converted its system at Pilot Station from covered utilidors to overhead lines. Because the Fancyboys' house was empty at the time of the conversion, AVEC did not install an overhead line.

2. Individuals often use jump lines in bush Alaska to provide power to steambaths and other outbuildings. If the jump line is attached properly, the meter box registers the electricity being used, so AVEC can bill the customer for the extra use.

where he drank "about six, eight-ounce cups" of beer. After Raymond and the boys returned home, all three settled on the couch to watch cartoons. Raymond fell asleep and awoke to smoke, pounding on the wall, and the boys' cries. Raymond located Todd and passed him out of a window to one of the villagers. Because of the smoke and heat, he could not find Willie and had to leave the house through a window. As Willie cried from inside the house, Raymond tried to reenter the house, but his neighbors held him back. The house burned to the ground in less than forty-five minutes.

Willie died in the fire. Todd experienced third-degree burns on his scalp, forehead, chin, neck, hands, and lower back. Raymond suffered pneumonia from smoke inhalation and burns on his right hand and lower back.

Because the Fancyboys' house burned to the ground, little physical evidence existed from which investigators could determine the cause of the fire. The deputy state fire marshal concluded that the most likely cause of the fire was electrical, due to a voltage drop that occurred when the electricity flowed through the undersized cable over a long distance. He also concluded that the fire most likely started on the porch near the freezer. The Fancyboys' expert witness confirmed the fire marshal's conclusions. The expert testified that the freezer likely malfunctioned due to the reduced current delivered through the Romex wire, causing the freezer compressor to overheat and ignite nearby plastics and combustibles.

The Fancyboys filed suit against AVEC, alleging, among other things, negligent failure to inspect or discover the dangerous condition and negligent failure to warn the Fancyboys of the condition. AVEC defended by contending that the fire was not electrical in origin and that the children had started it. Alternatively, AVEC argued that Raymond failed to supervise his sons adequately. The jury found that both AVEC and Raymond were negligent and that the negligence of each was a legal cause of injury to the Fancyboys. The jury then allocated forty percent of fault to AVEC and sixty percent of fault to Raymond.

The jury awarded $100,000 to Raymond and Kathy for damages to their home and personal property. Kathy, as personal representative of Willie's estate and legal guardian of Todd, did not receive any recovery. Neither Kathy nor Raymond received any damages for loss of consortium. Raymond received no compensation for his painful injuries.

The trial judge and counsel for both parties agreed that the jury's failure to award stipulated medical expenses was inconsistent with its finding that AVEC was partially liable. The Fancyboys also argued that the jury's failure to award any non-economic damages was inconsistent with its determination that AVEC's negligence was a legal cause of the fire.

The court attempted to cure the inconsistency with a supplemental jury instruction on the stipulated medical expenses, deferring "for a different day" the issue of whether the evidence supported the jury's decision not to award non-economic damages. The court informed the jury of the inconsistency between its finding that AVEC's negligence was a legal cause of the plaintiffs' harm and its decision not to award the stipulated medical damages and asked the jury to redeliberate, allowing it to reconsider any of its findings.

The jury returned a second verdict, awarding stipulated medical damages for Raymond and Todd's injuries, as well as an amount for Todd's future medical expenses. The jury made no other changes to the verdict. A jury poll revealed that the verdict was unanimous.

AVEC later moved to reinstate the original verdict, arguing that the verdict was consistent after all. AVEC reasoned that the jury could have believed both that AVEC was a legal cause of the property damage and that Raymond was a superseding cause of Willie's death and the personal injuries suffered by the family. The trial court agreed with AVEC's position that the original verdict was consistent but concluded that AVEC had waived that argument when it agreed to the supplemental jury instruction. Thus, the court denied AVEC's motion to reinstate the original verdict.

The Fancyboys moved for a new trial on non-economic damages, arguing that they

had established these damages by the clear weight of the evidence. Based on its determination that the first verdict was actually consistent, the court denied the Fancyboys' motion for a new trial.

When the superior court entered final judgment, it reduced the damage awards to each plaintiff by sixty percent, the percentage of fault allocated to Raymond. But it also determined that the Fancyboys were the prevailing party and awarded them attorney's fees. The Fancyboys appeal the trial court's reduction of the awards and its refusal to grant a new trial on damages. AVEC cross-appeals the trial court's refusal to reinstate the original verdict and the court's designation of the Fancyboys as the prevailing party for the purpose of awarding attorney's fees.

## III. DISCUSSION

### A. The Trial Court Did Not Err by Reducing the Fancyboys' Recovery by the Proportion of Fault Allocated to Raymond.

■ The Fancyboys argue that the trial court erred by reducing the jury's damage awards to Kathy, Todd, and the estate of Willie by the percentage of fault allocated to Raymond. They assert that AS 09.17.080,[3] the statute governing fault allocation in tort cases, does not permit courts to allocate fault to a co-plaintiff who has not been named as a third-party defendant pursuant to Alaska Civil Rule 14(c).[4] To support their interpretation, the Fancyboys assert that a co-plaintiff is not a "party to the claim" for purposes of AS 09.17.080(a)(2).

■ The question whether AS 09.17.080 permits reduction of one plaintiff's verdict by the percentage of a co-plaintiff's fault is an issue of first impression in Alaska. When we construe the meaning of a statute, we apply our independent judgment.[5] We look to "the meaning of the language, the legislative history, and the purpose of the statute in question." [6] We then adopt the rule of law that is most persuasive in light of precedent, reason, and policy.[7]

■ Alaska Statute 09.17.080 expressly instructs a court or jury to apportion fault to

---

3. The version of AS 09.17.080 that governs this case took effect in 1989. It provides:

(a) In all actions involving fault of more than one party to the action, including third-party defendants and persons who have been released under AS 09.16.040, the court, unless otherwise agreed by all parties, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings, indicating

(1) the amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and

(2) the percentage of the total fault of all of the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under AS 09.16.040.

(b) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault, and the extent of the causal relation between the conduct and the damages claimed. The trier of fact may determine that two or more persons are to be treated as a single party if their conduct was a cause of the damages claimed and the separate act or omission of each person cannot be distinguished.

(c) The court shall determine the award of damages to each claimant in accordance with the findings, subject to a reduction under AS 09.16.040, and enter judgment against each party liable. The court also shall determine and state in the judgment each party's equitable

share of the obligation to each claimant in accordance with the respective percentages of fault.

(d) The court shall enter judgment against each party liable on the basis of several liability in accordance with that party's percentage of fault.

The statute changed following trial in this case. See ch. 26, §§ 11–13 SLA 1997 (effective Aug. 7, 1997).

4. Civil Rule 14(c) provides:

For purposes of apportioning damages under AS 09.17.080, a defendant, as a third-party plaintiff, may follow the procedure of paragraph (a) to add as a third-party defendant any person whose fault may have been a cause of the damages claimed by the plaintiff. Judgment may be entered against a third-party defendant in favor of the plaintiff in accordance with the third-party defendant's respective percentage of fault, regardless of whether the plaintiff has asserted a direct claim against the third-party defendant.

5. See Muller v. BP Exploration (Alaska), Inc., 923 P.2d 783, 787 (Alaska 1996).

6. Id.

7. See Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

each party liable on the basis of several liability.[8] In particular, AS 09.17.080(a)(2) requires the trial court to instruct the jury to decide "the percentage of the total fault of all the *parties to each claim* that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability." (Emphasis added.) The Fancyboys interpret this language to mean that unless the defendant names the negligent co-plaintiff as a third-party defendant, the negligent co-plaintiff is not a party to the non-negligent plaintiff's claim against the defendant, and, thus, a court cannot reduce a non-negligent plaintiff's recovery by the negligent co-plaintiff's fault. Because the members of the Fancyboy family assert distinguishable claims, they maintain that a court cannot reduce any awards to the innocent claimants based on Raymond's fault.

■ We assume as a rule of statutory interpretation that the same words used twice in the same statute have the same meaning.[9] In *Benner v. Wichman,*[10] we construed the meaning of the term "party" in the context of AS 09.17.080(d), which requires that the court enter judgment "against each party liable . . . in accordance with that party's percentage of fault." We determined that the use of the term "party" in AS 09.17.080(a)—"party to the action, including third-party defendants and persons who have been released"—should be applied to subsection (d) as well.[11] In doing so, we recognized the importance, "[w]henever possible, [to] construe each part or section of a statute with every other part or section, to produce a harmonious whole."[12] Applying this rule of construction, we conclude that AS 09.17.080(a)(2) allows the jury to allocate fault to Raymond as a *party to the action.*

Here, the jury allocated sixty percent of the fault to Raymond and forty percent of the fault to AVEC. According to AS 09.17.080(d), the court could only enter judgment against AVEC for its equitable share of the obligation.[13] Thus, while the other Fancyboys may bear no fault, Raymond's fault as their co-plaintiff reduces their recovery from AVEC.

The Fancyboys also object to AVEC's failure to name Raymond as a third-party defendant under Civil Rule 14(c). They first argue that allocating fault to a co-plaintiff who has never been named as a third-party defendant could result in an injustice to the innocent co-plaintiff who may not receive full compensation for losses suffered: "[I]f a defendant contends one plaintiff is negligent but does not name that plaintiff as a third-party defendant, the defendant may reduce its own liability to all the plaintiffs and deny the innocent, non-negligent plaintiffs the opportunity to recover fully for their damages." But here, because of the familial relationship, the Fancyboys have not asserted any interest in collecting from Raymond the remaining sixty percent share of the judgment; the concern that they express is purely hypothetical. Thus, the Fancyboys' point that an innocent plaintiff may be unable to recover from a liable co-plaintiff who has not been joined as a third-party defendant need not be addressed in this case.

■ The Fancyboys next argue that because AVEC failed to file a third-party claim for allocation of fault as provided by Civil Rule 14(c), they were not properly notified of AVEC's plan to allocate fault to Raymond. But as the trial court recognized, AVEC's

8. *See* AS 09.17.080(d). By popular initiative, Alaska has abolished the system of joint and several liability, in which each tortfeasor could be fully liable for the injured party's damages and seek contribution or indemnity from any other joint tortfeasor. *See Robinson v. Alaska Properties and Inv., Inc.,* 878 F.Supp. 1318, 1321 (D.Alaska 1995); *Benner v. Wichman,* 874 P.2d 949, 955 (Alaska 1994). Thus, a plaintiff "[can] only recover from each tortfeasor in the proportion that his fault played to the total fault of all the persons and entities at fault including the plaintiff herself." *Robinson,* 878 F.Supp. at 1321.

9. *See* 2A Norman J. Singer, *Sutherland's Statutes and Statutory Construction* § 46.06 (5th ed.1992); *Benner,* 874 P.2d at 957.

10. 874 P.2d 949 (Alaska 1994).

11. *Id.* at 957–58.

12. *Id.* at 957 (citations omitted).

13. *See* AS 09.17.080(d).

answer to the Fancyboys' complaint contained the affirmative defense that "[a]ny damages ... were caused, in whole or in part, by the negligence of one or more of the plaintiffs." We thus agree with the trial court's conclusion that the Fancyboys had adequate notice that AVEC planned to make a claim for apportionment.

Because AS 09.17.080 allows allocation of fault to a co-plaintiff as a party to the action without requiring the defendant to implead the co-plaintiff as a third-party defendant and because AVEC provided adequate notice of its intent to allocate fault to Raymond, we conclude that the trial court did not err in reducing the Fancyboys' recovery by Raymond's allocation of fault.

B. *The Trial Court Did Not Err by Denying the Motion to Reinstate the Original Verdict.*

AVEC contends in its cross-appeal that the trial court should have granted its motion to reinstate the original verdict on the ground that it was consistent. In its first verdict, the jury found that AVEC's negligence was a legal cause of the fire but only awarded the Fancyboys damages for destruction of their home and other family property. This verdict puzzled the court and counsel for both parties because the parties had stipulated to certain medical costs as damages. The superior court provided clarifying instructions to the jury on this matter, directing it to redeliberate and allowing it to reconsider "any finding which you have made."

After the superior court entered final judgment based on an amended verdict that included the stipulated medical expenses, AVEC attempted to justify the first verdict's perceived inconsistencies by arguing that the jury could have concluded that AVEC was a legal cause of property damage to the house but that Raymond's conduct was a superseding cause of all personal injuries suffered by the Fancyboys. The superior court agreed that this theory reconciled any perceived inconsistencies in the original verdict:

> I realized how this verdict could be consistent and it's in fact how defendants have argued it.... [A]lthough Mr. Fancyboy was not a superseding cause as to the fire, [it could be] that he was a superseding cause as to the physical harm to the parties or that the jury could have rationally viewed it as such.

Yet the judge found that AVEC had waived reinstitution of the first verdict by agreeing at trial to resubmit the issue to the jury.

We need not address the waiver issue here because we conclude that the original verdict was inconsistent as a matter of law. AVEC's proposed justification for the first verdict assumes that a jury could properly find that Raymond's conduct was a superseding cause of liability for non-economic damages. AVEC contends that if Raymond had not been drinking, he would have supervised the children properly and possibly prevented the fire. Under our case law on superseding cause, however, any negligence in Raymond's supervision does not release AVEC from its liability for the resulting damages.

An event can have a superseding cause when "after the event and looking back from the harm to the actor's negligent conduct, it appears to the court *highly extraordinary* that it should have brought about the harm." [14] But "[a]n intervening cause that lies within the scope of the foreseeable risk, or has a reasonable connection to it, is not a superseding cause." [15] Thus, a third party's conduct is not a superseding cause as a matter of law if the conduct was within the scope of foreseeable risk created by the defendant's negligence.

For example, in *Osborne v. Russell*,[16] Osborne was fatally electrocuted when he reached into a floor safe and brushed bare wires sticking out of an open electrical box at the store where he worked.[17] The representative of Osborne's estate sued the store's electrician for negligence.[18] We held that

**14.** *Dura Corp. v. Harned*, 703 P.2d 396, 402 (Alaska 1985) (citation omitted).

**15.** *Id.*

**16.** 669 P.2d 550 (Alaska 1983).

**17.** *See id.* at 552.

**18.** *See id.*

"the fact that someone flipped over the circuit breaker and pulled out the wires does not, as a matter of law, amount to a superseding cause."[19]  Similarly, in *Gordon v. Alaska Pacific Bancorporation*,[20] the plaintiff was attacked and injured after intervening in a fight at a company party.[21]  The plaintiff sued the host company for negligent performance of its duty to provide security for his safety.[22]  We concluded as a matter of law that neither the plaintiff's intervention in the fight nor the subsequent attack on the plaintiff by one of the participants in the fight was a superseding cause of the plaintiff's injuries.[23]  Finally, in *Loeb v. Rasmussen*,[24] a minor committed suicide following an alcohol-related car accident.[25]  The representative of the minor's estate sued the owner of the store that had sold liquor to the minor prior to the accident.[26]  We held that the minor's willful misconduct in unlawfully buying and consuming alcohol and then driving while intoxicated was not a superseding cause of her injuries because "[i]t is well within the scope of foreseeable risk that a minor who purchases alcohol may drive an automobile, and that an alcohol-related accident may result."[27]

▮▮ At trial in this case, AVEC argued in both its opening statement and closing argument that the fire was not electrical in origin; rather, AVEC maintained that the children had started the fire due to Raymond's failure to supervise.  But the jury's determination that AVEC's negligence was a legal cause of the fire indicates that it found that the fire was electrical in origin.  Ray-mond's conduct in falling asleep while the children were home and failing to awaken during an electrical fire, even if due to drinking, was entirely within the scope of foreseeable risk from AVEC's negligence.  Thus, even if Raymond's negligence was an intervening, contributory cause, it was not a superseding cause.  In turn, AVEC should have been held liable for its proportionate share of all resulting damages.

Accordingly, the jury's first verdict, which failed to make any award for the Fancyboys' medical expenses or their non-economic damages was necessarily inconsistent.  Thus, we affirm the trial court's denial of AVEC's motion to reinstate the original verdict.

## C.  The Trial Court Erred by Denying the Fancyboys' Motion for a New Trial.

After the court instructed the jury to redeliberate, the jury continued to award only property damages and the stipulated medical expenses even though AVEC never disputed the Fancyboys' showing of non-economic harm.  Upon return of this verdict, the trial court commented that the verdict was "not particularly a logical verdict."  But based on its retrospective conclusion that the first verdict was consistent, the trial court refused to grant a new trial.[28]  The Fancyboys argue that the trial court should have granted a new trial because the second verdict was inconsistent in its exclusion of non-economic damages.

▮▮ AVEC first contends that the Fancyboys waived their right to challenge the

**19.** *Id.* at 556.

**20.** 753 P.2d 721 (Alaska 1988).

**21.** *See id.* at 722.

**22.** *See id.*

**23.** *See id.* at 725.

**24.** 822 P.2d 914 (Alaska 1991).

**25.** *See id.* at 916.

**26.** *See id.*

**27.** *Id.* at 920.

**28.** A trial court has broad discretion to grant or refuse a motion for a new trial.  *See Buoy v. ERA Helicopters, Inc.*, 771 P.2d 439, 442 (Alaska 1989) (affirming grant of new trial based on an inadequate verdict).  A trial court may grant a new trial "if required in the interest of justice."  Alaska R. Civ. P. 59(a).  A new trial may be appropriate if the verdict is inadequate or inconsistent.  *See Buoy*, 771 P.2d at 442; *McCubbins v. State, Dep't of Natural Resources*, 973 P.2d 588, 593–94 (Alaska 1999) (reversing denial of new trial based on an inconsistent verdict).  We will not disturb a trial court's ruling on such a motion "except in the most exceptional circumstances and to prevent a miscarriage of justice."  *Sebring v. Colver*, 649 P.2d 932, 934 (Alaska 1982) (citation omitted).  Upon review of the record, we must be left with a definite and firm conviction that the trial court erred.  *See id.*

consistency of the second verdict because the Fancyboys did not make an additional objection to inconsistency upon return of the second verdict. To preserve an inconsistency objection, the party must have asked for resubmission of the issue prior to the discharge of the jury.[29]

As the Fancyboys point out, they made two separate objections after the first verdict: They objected to both the jury's failure to include the stipulated medical expenses and its failure to include any non-economic damages. The court instructed the jury that it must consider stipulated medical damages but declined to address the issue of the jury's failure to award non-economic damages: "I think there are two problems. One of which is a problem for a different day." This remark suggests that the court viewed the jury's failure to award non-economic damages as a problem with the adequacy of the verdict, rather than an inconsistency that required an immediate cure. By phrasing the issues in this way, the court effectively represented to the Fancyboys that they had preserved their objection to the failure to award non-economic damages. Because the Fancyboys could have reasonably relied on that representation, we conclude that they did not need to make the same objection to inconsistency after the second verdict.

■■■■ We now turn to the consistency of the second verdict. As we discussed with respect to the first verdict, in light of the jury's determination that the fire was electrical in origin, Raymond's failure to wake up during the fire to supervise the children was a foreseeable result of AVEC's negligence. Thus, although Raymond's negligence may have been an intervening cause of the Fancyboys' injuries, it could not have been a superseding cause. Accordingly, AVEC is liable for its proportionate share of *all* resulting damages, whether economic or non-economic. We see no principled way for the jury to have awarded damages for property loss and medical expenses but not non-economic damages to compensate the Fancyboys for their painful burns and their loss of consortium due to Willie's death. Because the second verdict was inconsistent, a new trial is indeed "required in the interest of justice" pursuant to Alaska Civil Rule 59(a).

■■■■ The Fancyboys also ask us to direct the trial court on remand to limit the new trial to the issue of damages. At the end of the trial, the trial court suggested that any new trial would require resubmission of all issues to the jury. The question of "[w]hat issues are to be relitigated upon remand, in the absence of a directive from this court, is within the discretion of the trial court."[30] "Whether the issues [of liability and damages] are sufficiently separable to warrant a partial new trial depends on the facts and circumstances of each case."[31] In comparative negligence cases, we have upheld trial court decisions granting a partial new trial on the issue of liability alone,[32] the issue of damages alone,[33] and a full trial on both the liability and damages issues.[34] Given the broad discretion that we afford trial courts on this matter, we leave it to the superior court to determine whether a new trial on all issues will be necessary.

## IV. CONCLUSION

We conclude that the first and second verdicts in this case were inconsistent as a mat-

---

**29.** See *Blumenshine v. Baptiste*, 869 P.2d 470, 473 (Alaska 1994); *Buoy*, 771 P.2d at 446 n. 7.

**30.** *Caterpillar Tractor Co. v. Beck*, 624 P.2d 790, 795 (Alaska 1981); see also Alaska R. Civ. P. 59(a) (holding that a trial court can grant a new trial on "all or part of the issues in an action where there has been a trial by jury"); *State v. Municipality of Anchorage*, 805 P.2d 971, 974 (Alaska 1991) ("On a motion for a new trial ... the trial court has discretion ... to order that the new trial be had on all or part of the issues ....") (quoting 6A J. Moore, J. Lucas & G. Grotheer, Moore's Federal Practice ¶ 59.06 (2d ed.1989)) (first two alterations in original).

**31.** *Beck*, 624 P.2d at 795; see also *Municipality of Anchorage*, 805 P.2d at 973; *Sturm, Ruger & Co. v. Day*, 615 P.2d 621, 623 (Alaska 1980).

**32.** See *Day*, 615 P.2d at 624.

**33.** See *Sebring v. Colver*, 649 P.2d 932, 934 (Alaska 1982).

**34.** See *Municipality of Anchorage*, 805 P.2d at 975 (concluding that the jury's small damage award, in light of its finding that the state was thirty percent at fault, suggested compromise or prejudice on its face and justified a new trial).

ter of law.  Accordingly, we REVERSE and REMAND for a new trial.[35]

CARPENETI, Justice, not participating.

**35.**  AVEC also argues on cross-appeal that it should have been designated as the prevailing party for the purpose of attorney's fees.  Because we are remanding for a new trial, however, we need not address that issue.