**David E. PAXTON, Appellant,**

v.

**Debra M. Bates GAVLAK, Appellee.**

No. S–10607.

Supreme Court of Alaska.

Oct. 15, 2004.

David E. Paxton, pro se, Decorah, Iowa.

Debra M. Bates Gavlak, pro se, Fairbanks.

Pamela Hartnell, Assistant Attorney General, Fairbanks, and Gregg D. Renkes, Attorney General, Juneau, for State of Alaska, Department of Revenue, Child Support Enforcement Division.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

A 1989 court order required David Paxton to pay substantial monthly child support. He accrued large arrearages, and the Alaska Child Support Enforcement Division (CSED) sought consolidation of his debt into a single judgment. In January 1997 CSED began an administrative review of his financial circumstances, and he provided CSED with information that, if correct, required a substantial reduction in his monthly obligation. In November 1999 he asked the superior court to reduce his payments. The court reduced his payments, but only from November 1999 forward. The primary question here is whether it would violate the prohibition on retroactive modification of court-ordered child support to consider his financial circumstances as of January 1997. Because CSED never closed its administrative file with a final, appealable decision denying Paxton relief before November 1999, we conclude that modification as of January 1997 would not be retroactive. We therefore remand for consideration of Paxton's financial circumstances from that date onward. We affirm the superior court's modification of the support order from November 1999 forward.

## II. FACTS AND PROCEEDINGS

David Paxton and Debra Bates Gavlak are the parents of Megan Paxton, born in August 1983. Paxton and Gavlak divorced in 1989, and the superior court entered an order in November 1989 requiring Paxton to pay $328 per month for child support. The order also called for automatic child support increases of $100 per month as of September 1, 1993 and $200 per month as of September 1, 1998. Paxton did not appeal entry of this order.

Gavlak applied in December 1989 for CSED's help in collecting payments from Paxton. She withdrew from CSED services in July 1990, and CSED closed its case.

Paxton and Gavlak agree that Megan lived with Paxton from July 1994 to July 1995. Paxton began receiving grants of Aid to Families with Dependent Children (AFDC) for Megan while she was living with him starting in July 1994, and he stopped receiving the grants in September 1995. He again began receiving AFDC grants for Megan in August 1996 and stopped receiving them in January 1997.

Gavlak wrote to Paxton in August 1996 stating that she could not "dismiss the issue of [M]eg's support any longer," because she could "no longer ... take care" of Megan without Paxton's help. She also wrote that she realized the amount in the support order was "not a viable figure today," and she requested child support payments of $200 per month starting September 1996. Gavlak reapplied for CSED services in October 1996.

Paxton, Gavlak, or both asked CSED in January 1997 to review the child support amount in the support order, and CSED began to review the support amount. CSED on January 22 mailed to both Paxton and Gavlak a notice of petition for modification of judicial support order and requested financial information.[1] Paxton promptly sent CSED child support guidelines affidavits stating that his net income was $990 in 1995 and $1,030 in 1996; CSED sent a letter to Paxton dated April 4, 1997 stating that he was "not in substantial compliance" with his child support order, but on May 6 it informed him that he was "in substantial compliance" with his child support order.

Paxton filed a superior court motion to modify on May 13, 1997.

While this court proceeding was still in progress, CSED wrote Paxton on May 19, stating that it intended to close its case, because "[t]here is no longer a current support order, and arrears are less than $500.00 or unenforceable under State law." Another CSED letter of the same date similarly stated that the "case has been closed." In fact, it appears that there was still a "current" support order, and that Paxton's arrearages actually were then very substantial, perhaps as much as $33,364.

The superior court denied Paxton's modification motion in June 1997. The court did not send the notice of denial to Paxton's correct post office box; he therefore did not receive it.

CSED informed Paxton on November 5, 1998 that it had ceased the modification review. The appellate record contains no docu-

ments between June 1997, when the superior court denied Paxton's modification motion, and November 5, 1998, when CSED sent this "cessation" letter to Paxton.

After misinforming Paxton in May 1997 of the status of his support obligation, CSED did not give Paxton notice of any child support obligation until November 9, 1998, when it informed him that he had a monthly obligation of $628. Its letter of December 6, 1998 informed him his arrearages totaled $10,211.86.

Paxton filed a superior court motion to modify child custody on September 9, 1999. The superior court issued a new child custody and support order on October 11, 1999. The order granted legal and primary physical custody to Paxton and ordered Gavlak to pay $495 per month for child support, beginning September 1999. This order stated that Paxton was "to deduct [this amount] from back child support due" Gavlak. Another October 11 order stated that "no additional child support shall be calculated against [Paxton] as of 9/1/99."

A week later Paxton filed a motion to modify child support owed. CSED and Gavlak both opposed this motion. The court denied this motion in early November 1999.

Paxton moved on November 13, 1999 for prospective modification of the 1989 child support order. In March 2000 the court entered an order modifying child support, granting primary physical custody to Gavlak, and reducing Paxton's monthly child support obligation to $50 effective November 1999. On March 27, 2001 the court signed an order ending Paxton's monthly child support obligation as of January 1, 2001.

CSED filed a motion to consolidate child support arrearages in a single judgment in February 2002. It contended that Paxton's total arrearages, including interest, were $70,833.04 as of January 2002.

In February 2002 Paxton asked the court to adjust his child support arrearages in a

1. CSED mailed a notice of right to request a review of support order to Paxton on January 8, 1997, requesting similar documents. It is unclear whether Paxton responded, although in a

letter to CSED dated January 27, 1997 he claims he did. Regardless, Paxton's request for modification and CSED's sending of notices to both Paxton and Gavlak occurred in January 1997.

final judgment and to modify his support obligation from 1990 to January 2001. His main argument was that his income had changed, but he also pointed out that Gavlak had withdrawn from, and reapplied for, CSED's services several times. CSED opposed this motion.

The superior court granted CSED's motion to consolidate Paxton's support arrearages in April 2002. It denied Paxton's motion to adjust his child support from July 1990 forward. Paxton requested reconsideration. The court denied Paxton's request for reconsideration in April 2002, and it did not use Paxton's proposed order denying CSED's motion to consolidate support arrearages to a single judgment. Paxton appeals these decisions.

## III. DISCUSSION

### A. Standard of Review

■ We apply our independent judgment when reviewing a lower court's interpretation of statutes and other related legal questions,[2] and when determining whether a party's procedural due process rights have been violated.[3] When construing the meaning of a statute under this standard, we "look to 'the meaning of the language, the legislative history, and the purpose of the statute' "[4] and " 'adopt the rule of law that is most persuasive in light of precedent, reason, and policy.' "[5] We review fact findings under the clearly erroneous standard.[6] A finding is clearly erroneous if it leaves the court with a "definite and firm conviction on the entire record that a mistake has been made."[7]

### B. Modifying Paxton's Obligation as of January 1997, when CSED Issued Its Notice of Petition for Modification, Would Not Be Retroactive Modification.

■ Because it is essentially undisputed that the child support Paxton was ordered to pay was excessive given the amount of his income, the primary question is when reduction should have taken effect, without violating the prohibition on retroactive modification.

Alaska Rule of Civil Procedure 90.3(h)(2) states in part that "[c]hild support arrearage may not be modified retroactively, except as allowed by AS 25.27.166(d) [question of paternity]."[8] No party questions this fundamental concept. But they disagree about whether modification effective before Paxton filed his superior court October 1999 modification motion should be considered retroactive.

Paxton points out that in January 1997 CSED issued a notice of petition for modification of judicial support order and that both parents submitted the paperwork needed to calculate his obligation. He claims that under Rule 90.3(h)(2) this triggered the modification process, and that modifying child support effective the date of the notice of petition is not retroactive modification. Paxton also argues that CSED failed to afford him "a full and fair hearing to present evidence of his actual income." He argues the superior court ignored his income information, denying him due process. His appellate briefs do not state when he believes the prospective modification should have

2. *Cook Inlet Keeper v. State,* 46 P.3d 957, 961 (Alaska 2002); *Fancyboy v. Alaska Vill. Elec. Co-op., Inc.,* 984 P.2d 1128, 1132 (Alaska 1999).

3. *Lashbrook v. Lashbrook,* 957 P.2d 326, 328 (Alaska 1998).

4. *Fancyboy,* 984 P.2d at 1132 (quoting *Muller v. BP Exploration (Alaska), Inc.,* 923 P.2d 783, 787 (Alaska 1996)).

5. *Enders v. Parker,* 66 P.3d 11, 14 (Alaska 2003) (quoting *Fancyboy,* 984 P.2d at 1132).

6. *Dunn v. Dunn,* 952 P.2d 268, 270 (Alaska 1998).

7. *Id.* (quoting *R.F. v. S.S.,* 928 P.2d 1194, 1196 n. 2 (Alaska 1996)).

8. *See also Wright v. Wright,* 22 P.3d 875, 878 (Alaska 2001) ("Retroactive modification of a child support arrearage is prohibited."); *State, Dep't of Revenue, Child Support Enforcement Div. ex rel. Husa v. Schofield,* 993 P.2d 405, 407–08 (Alaska 1999) ("Both federal and Alaska law prohibit, with few exceptions, retroactive modification of child support obligations, whether the change is an increase or a decrease in the parent's obligation.").

started, but in his superior court memorandum he requested the court to "adjust his child support obligation as per Civil Rule 90.3 from 1990 to January 2001."

CSED responds that it properly terminated its administrative review of the case in 1997 and notified both parents of the termination. It argues that it cannot administratively modify a court order; it can only review a court order and file a motion if it determines the order should be modified.[9] It argues that Paxton's May 1997 motion in the superior court to modify the 1989 order made CSED's administrative review redundant. It asserts that a parent must choose either to proceed through the administrative review process or to file his own motion in court, because AS 25.27.135 discourages simultaneous proceedings.[10] CSED argues that Paxton is really requesting retroactive modification of his child support arrearages, namely those accumulating from 1990 to January 2001, which had already become individual judgments per AS 25.27.225.

Rule 90.3(h)(2) states in part that "[a] modification which is effective on or after the date that a motion for modification, or a notice of petition for modification by the Child Support Enforcement Division, is served on the opposing party is not considered a retroactive modification." We have held that this rule "clearly provides that a modification order made effective on the date the original motion was served is not retroactive."[11] The same rule applies to service of a CSED notice of petition for modification upon the noncustodial parent.[12] We therefore turn to the issue of when Paxton first requested a modification of his child support obligation.

CSED began reviewing the November 1989 child support order in January 1997. It mailed both Paxton and Gavlak a notice of petition for modification of judicial support order and requested financial information. Paxton promptly submitted child support guidelines affidavits stating that his net income was $990 in 1995 and $1,030 in 1996. Thus, by early 1997 CSED knew that Paxton's income, if correctly stated by him, could not possibly justify the child support obligation prescribed by the 1989 order.

Paxton's May 1997 motion to modify asked the superior court to "modify the existing Child Support Agreement to allow joint custody." It is unclear from the record whether this motion expressly, or impliedly, asked the superior court to consider his financial circumstances. The excerpt of record contains a photocopy of the motion; on it is a photocopied and handwritten "and" between "Child Support Agreement" and "to allow." It is unclear who made this change or when it was made. The original motion, filed in the superior court and found in the appellate record, lacks this interlineation. Without giving reasons, the superior court denied the motion in June 1997. This handwritten "and" makes it unclear whether Paxton raised the issue of changed financial circumstances in the superior court before it denied his motion. In any event, the change in the child's custody was the main reason Paxton's May 1997 motion gave as justification for modifying support. It would have been difficult for the superior court to have considered Paxton's changed financial situation then, given the lack of evidence before the court on that issue.

While Paxton's superior court modification motion was still pending, CSED informed Paxton in a letter dated May 19, 1997 that "the modification review for this case was scheduled in error, and is now ceased. The case has been closed, and the custodial parent has not re-applied for services." This letter did not state that this closure was

---

**9.** 15 Alaska Administrative Code 125.326 (2003).

**10.** AS 25.27.135 provides: "If the same causes of action concerning a duty of child support are pending concurrently in court and before [CSED], the second action filed may be abated upon the motion of a party or [CSED]."

**11.** *Epperson v. Epperson,* 835 P.2d 451, 453 (Alaska 1992); *see also Boone v. Boone,* 960 P.2d 579, 585 (Alaska 1998) ("The rule implicitly permits a court to modify child support effective the date the opposing party was served.").

**12.** *State, Dep't of Revenue, Child Support Enforcement Div. v. Dillon,* 977 P.2d 118, 120 (Alaska 1999).

CSED's final decision in the matter or that Paxton had thirty days to appeal it.

Nearly eighteen months later CSED sent Paxton a letter dated November 5, 1998 stating that CSED had ceased the modification review, because Paxton had "filed directly in Court for a modification of [his] child support." This letter did not state that it was a final administrative decision or that Paxton had thirty days to appeal CSED's action.

■ Alaska Rule of Appellate Procedure 602(a)(2) states, in part, that "an appeal may be taken to the superior court from an administrative agency within 30 days from the date that the decision appealed from is mailed or otherwise distributed to the appellant." Rule 602(a)(2) also states that the thirty-day period "does not begin to run until the agency has issued a decision that clearly states that it is a final decision and that the claimant has thirty days to appeal." "[W]here an administrative agency's decision is communicated in a letter that fails to do either of these things, it is an abuse of discretion not to relax Rule 602(a)(2)'s thirty-day appeal deadline." [13]

CSED's May 19, 1997 and November 5, 1998 letters to Paxton did not meet the requirements of Rule 602(a)(2). Consequently, CSED's review file had not been closed in a manner satisfying Rule 602(a)(2) as of 1999, when he again sought judicial modification.

CSED also sent letters containing dramatically erroneous information to Paxton. CSED wrote him on May 6, 1997, stating that he was "in substantial compliance" with his child support order. CSED also wrote him on May 19, stating that it intended to close its case, because "[t]here is no longer a current support order, and arrears are less than $500.00 or unenforceable under State law." These letters could have only reinforced Paxton's belief that he did not need to pursue modification in the superior court. CSED also did not inform Paxton until November 1998 that it would not proceed with the administrative review so long as the su-

perior court change of custody case remained open.

At oral argument before us CSED argued that it did not need to proceed with the changed financial circumstances issue, because a change in custody would have resulted in a new child support arrangement, thereby superseding this issue. Yet Gavlak ultimately retained custody of Megan; thus, Paxton's change in financial circumstances remained a key issue, and CSED never told Paxton he should raise that issue in the superior court. Nor did CSED reinstate its own review after the superior court denied Paxton's modification motion in June 1997.

Paxton's October 19, 1999 superior court motion asked the court to reduce his child support obligation "from December 1998 thru August 1999 from $628.00 per month to $50.00 per month to accurately reflect Paxton's earnings during that time." This appears to be the first time that Paxton directly asked the superior court to reduce his child support by reason of reduced income. The court denied this motion on November 8, 1999.

We conclude that CSED's failure to send Paxton a closure letter satisfying Appellate Rule 602 had the consequence of keeping its review file open. Per Civil Rule 90.3(h)(2), modification effective as of January 22, 1997, when CSED issued its notice of petition, would not have been a retroactive modification.[14] Paxton's submission to CSED of financial information demonstrated at least prima facie justification for substantially reducing his child support obligation. Because the administrative file remained open, judicial modification effective as of January 1997 would not be retroactive. We remand to the superior court to consider Paxton's financial situation as of January 1997.

We also note that reduction of Paxton's child support obligation after January 1997 will affect the interest owed on any arrearages.

**13.** *Skudrzyk v. Reynolds*, 856 P.2d 462, 463 (Alaska 1993).

**14.** Civil Rule 90.3(h)(2) states that a modification effective on or after the date of a CSED notice of petition for modification is not a retroactive modification.

## C. CSED Made Accounting Mistakes.

CSED conceded at oral argument before us that it erred in calculating Paxton's child support obligation by failing to credit Paxton for the payments of $495 that Gavlak was to pay him in September and October of 1999 per the October 1999 support order. To correct this error, CSED should submit to the superior court a revised accounting statement with the September and October credits subtracted from the principal Paxton owes, with appropriate reduction in the interest he owes.

## D. Paxton's Other Arguments Lack Merit.

Paxton raises several other arguments. He asserts that Gavlak "dismissed child support" between July 1990 and October 1996 because she waived it in the August 1996 letter she wrote to him and because she had withdrawn from CSED services during that time. He asserts that CSED may not collect the public assistance granted to him when Megan was living with him, because his liability may not exceed the amount provided for in the support order.[15] He argues that because the December 1998 arrearages statement did not include arrearages from July 1990 to January 1997, CSED is deemed to have waived this amount. He argues that CSED filed its motion in the wrong case, thereby violating his right to due process. Finally, he argues that enforcing this child support obligation would be cruel and unusual punishment.[16]

 These arguments are without merit. A parent may not waive past-due court-ordered child support.[17] Similarly, "a custodial parent's conduct cannot amount to an estoppel or waiver altering the obligation to pay child support. This follows from the rule that parties cannot by agreement alter a noncustodial parent's obligation to pay child support without court approval."[18] Therefore, neither Gavlak's August 1996 letter to Paxton nor her withdrawal from CSED's services modified Paxton's court-ordered child support obligation. Paxton is liable for any AFDC grants that he received, although this amount may not exceed the amount he owed under the support order.[19] CSED's balance sheet takes the AFDC grants to Paxton into account, and limits his total obligation to the amount in the support order. CSED may not waive, and is not estopped from collecting, support that the obligor owes to the child, because the right to support is the child's, not CSED's.[20] CSED's failure to file its motion in the right case, if it was error, is harmless.[21] Finally, Paxton's claim of cruel and unusual punishment lacks merit, because child support is not bail, a fine, or punishment,[22] and Article I, section 12 of the Alaska Constitution only applies to criminal matters.

## IV. CONCLUSION

We VACATE the November 8, 1999 order to the extent it precluded a potential change

---

**15.** AS 25.27.120.

**16.** Paxton cites Amendment VIII of the United States Constitution. He does not cite the corresponding provision in the Alaska Constitution, article I, section 12.

**17.** In *Murphy v. Newlynn*, 34 P.3d 331, 333 (Alaska 2001) (citations omitted), we stated:

> [A]greements to waive child support are not valid until a court has reviewed and approved the waiver's substantive adequacy under Rule 90.3, and even a court-approved waiver will be given only prospective effect.... Under this court's precedent, [the former spouse's] alleged waiver thus cannot relieve [the obligor] from his obligation to make his past due child support payments.

*See also Nix v. Nix*, 855 P.2d 1332, 1334 (Alaska 1993) ("[A] child support waiver is *not* valid and enforceable *until* a court has reviewed and ap-

proved the waiver's substantive adequacy under Rule 90.3.") (original emphasis).

**18.** *State, Dep't of Revenue, Child Support Enforcement Div. ex rel. Hawthorne v. Rios*, 938 P.2d 1013, 1017 n. 8 (Alaska 1997).

**19.** AS 25.27.120(a); *see also State, Dep't of Revenue, Child Support Enforcement Div. v. Green*, 983 P.2d 1249, 1253, 1256 (Alaska 1999).

**20.** *Murphy*, 34 P.3d at 333 n. 7; *State, Dep't of Revenue, Child Support Enforcement Div. ex rel. Gause v. Gause*, 967 P.2d 599, 604 (Alaska 1998); *State, Dep't of Revenue, Child Support Enforcement Div. ex rel. Valdez v. Valdez*, 941 P.2d 144, 154 n. 14 (Alaska 1997).

**21.** Alaska R. Civ. P. 61.

**22.** *Cf.* U.S. CONST. amend. VIII.

in Paxton's child support payments as of January 1997. We likewise VACATE any other superior court order to the extent it may have that effect. We REMAND for consideration of Paxton's financial circumstances from January 1997 forward, and for correction of the arithmetic error noted above. We AFFIRM the superior court's March 20, 2000 order prospectively modifying Paxton's child support obligation.