## In re UNDERWOOD'S ESTATE.

(Third Division. Valdez. August 11, 1922.)

**1. Executors and Administrators ⬡485—Costs.**

The petition for the appointment of an administratrix in the estate of John Underwood, deceased, alleged that the estate was of less value than $4,000. The expenses of the last illness, the funeral expenses, and costs of administration were shown to have been paid or provided for, and the widow petitioned the court, under chapter 12, Sess. Laws Alaska 1919, that the entire estate be awarded to her without further administration. Over her objection an administratrix was appointed, and costs and expenses piled up by the intermeddling of the administratrix. On final settlement of the estate the administratrix presented the bill of costs, attorney's fees, costs of publication of citations to the widow, and other items of cost. *Held*, the Alaskan statute providing the estate should be set apart to the widow if of less value than $4,000 made all such costs and fees unnecessary, and only those costs of the probate court necessary to proving the value of the estate allowed. All others disallowed.

**2. Executors and Administrators ⬡485—Costs.**

Costs and expenses will not be allowed on the final settlement of an estate where the services charged for constitute a palpable injury and loss to the estate and to its sole lawful claimant and owner.

**3. Executors and Administrators ⬡495(1)—Words and Phrases—"Accounted for."**

In a final settlement of the administration of an estate in Alaska, on a presentation of an account, wherein the administratrix charges compensation on the whole value of the estate, *held*, that only so much of the estate as has actually passed through the hands of the administratrix is "accounted for," and compensation on the whole value is denied.

**4. Executors and Administrators ⬡118—Loss to Estate.**

Where a loss is thrown on an estate through the fault of an administratrix, it is the duty of the probate court to tax the amount of such loss against the administratrix as a diminution of the estate caused by her fault.

**5. Executors and Administrators ⬡111(1)—Costs—Attorney's Fees.**

Where one intrudes into the administration of an estate and employs an attorney whose services are found to be rendered to the intruder in her enterprise of meddling in a matter with which she has no concern, the probate court will not allow such attorney's fees as a claim or costs against the estate.

⬡See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Executors and Administrators ⬷═226—Costs—Notice to Creditors.**
Where the administratrix of an estate is authorized by the probate court to publish notice to creditors in a newspaper published in the precinct where the court is held, an account for publication in another paper outside the jurisdiction of the court will not be allowed.

**7. Courts ⬷═202(5)—Probate—Equity—Appeal and Error.**
On an appeal from a probate court to the district court in Alaska, the case is heard in the appellate court in the nature of a suit in equity, and should be decided on equitable principles.

This is an appeal from a decision of the probate court of McCarthy precinct refusing to allow statutory compensation, attorney fees and certain costs to Jean Tjosevig, administratrix of the estate of John Underwood, deceased. The essential facts are easily stated:

John Underwood died July 27, 1921. On August 5 following his daughter Jean Tjosevig filed a petition in the probate court asking that letters of administration be issued to her. She named the widow and three children of John Underwood, all adults, as heirs. The three were a son living in Illinois, a daughter in South Carolina, and herself. The hearing was set for August 15 and a citation was issued to the widow, which was served on her by a deputy marshal, and also published once in the McCarthy News, a local weekly newspaper. The petitioner also alleged that the estate was worth not more than $2,500. On August 15 the widow, Elizabeth Underwood, filed a petition asking administration, naming the same heirs, and also alleging that the estate was worth not more than $2,500. She also alleged that the expenses of the last illness, the funeral expenses, and costs of administration had been provided for and would be duly paid, and therefore asked that, pursuant to chapter 12 of the Session Laws of the Alaska Legislature of 1919, the entire estate be awarded to her. This allegation has never been denied, and therefore must be taken as true.

On August 17 Probate Judge Spongberg appointed F. A. Iverson administrator. His declination of the trust was filed August 25, and on that day a new citation was issued addressed to Elizabeth Underwood, Jean Tjosevig, A. H. Underwood, of Kewanee, Ill., and Mrs. Helen O'Neal, of Saluda,

---

⬷═See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

S. C., directing them to appear September 6 and show cause why Jean Tjosevig should not be appointed administratrix. This citation was served on Elizabeth Underwood by a deputy marshal and also published once in the McCarthy News. On September 7 Jean Tjosevig was appointed administratrix and duly qualified by filing bond and oath, whereupon letters of administration were issued to her. Thereafter, at her instance, appraisers of the estate were appointed, and on October 5 she filed an inventory and appraisement showing the value of the estate to be $2,279.75, of which $1,300 was realty. An appeal from the order appointing Jean Tjosevig had been taken September 24, 1921, but was dismissed in the district court because no notice of the appeal was given to the administratrix. On return of the record to the probate court Elizabeth Underwood filed a petition asking that the entire estate be set apart to her as provided by the statute already mentioned.

After a hearing on the widow's last-named petition Probate Judge Coppernoll, successor to Judge Spongberg, who had conducted the previous proceedings, granted the same, directed that an order be entered accordingly, and refused any compensation or attorney's fees to the administratrix, also refusing to allow certain costs which she claimed to have incurred. He directed that the costs in the probate court and the appraisement be paid. The costs which he refused to allow were two services by the deputy marshal of citations upon Mrs. Underwood, a total of $12, two publications of citations in the McCarthy News, amounting to $12, and publication of a notice to creditors in the Cordova Daily Times, amounting to $5.70. The fees as administratrix demanded by Jean Tjosevig amounted to $140.36, being figured on the total estate as shown by the inventory and appraisement. She also asked $147.50 attorney fees and expenses of attorney for "legal services to administratrix."

Probate Judge Coppernoll disallowed the fees claimed by the administratrix on the ground that she had performed no service of value to the estate, which belonged wholly to the widow, so that she had no interest therein. He refused to allow the attorney's fee on the ground that the attorney had performed no service beneficial to the estate, but that, on the contrary, his services had been entirely to the administra-

trix, as stated in her voucher for his fees. He refused to allow the expense for serving citations on the ground that the citations were wholly unnecessary. He refused to allow the cost of publication of notice to creditors in the Cordova Times because the order for publication directed that the same be made in the McCarthy News, a newspaper published in the precinct, and because there is no provision of law for the publication of such a notice outside the precinct.

Edward F. Medley, of Cordova, for administratrix.

J. H. Murray and Donohoe & Dimond, of Valdez, for widow.

RITCHIE, District Judge. I agree generally with the opinion and findings of the probate judge. I do not agree with his conclusion that the appointment of Jean Tjosevig "was illegal" and "without warrant of law." It was a gross abuse of discretion, because before the appointment was made the court had before it the petition of Jean Tjosevig and the petition of Elizabeth Underwood, each stating under oath that the estate was worth less than $2,500, and the petition of Mrs. Underwood asked that it be set apart to her under the statute. This was sufficient notice to the court and all the world that the entire estate belonged to the widow. It apprised the court fully that no other person had any right to meddle in the estate beyond insistence by interested persons that the expenses of the last illness and of the funeral be paid. Jean Tjosevig had a right to demand that these expenses be paid, but she has never questioned the statement in the widow's petition of August 15 that those expenses had been provided for, nor has she ever asserted that she herself had paid them and claimed reimbursement. On the record, then, Jean Tjosevig never had any right to assert herself in the proceeding, and she was a mere interloper throughout. Nevertheless she was qualified under the statute to be administratrix, although the superior right was in the widow, and the probate judge had a lawful right to appoint her, however amazing may have been his abuse of discretion in so doing. The question remains whether her lawful appointment entitles her, as matter of law, to the compensation and expenses she demands, regardless of the unquestioned fact that her appointment and subsequent actions constituted a palpable injury and

loss to the estate and to its sole lawful claimant. After consideration of the law, I have no hesitation in answering this question in the negative.

Counsel for Jean Tjosevig urges that the compensation. of the administrator is fixed by section 1701 of the Alaska Code, and that neither the probate court nor the district court on appeal has any right to refuse or diminish the commission allowed an administrator "upon the whole estate accounted for by him." There is some plausibility in this argument, whatever injustice it might cause in cases like the present one. However, to allow the administratrix the full commission claimed by her it is necessary to find that the term "accounted for" means the total amount of the appraisement. The word "accounted" in the statute may be interpreted in two ways: First, as claimed by counsel, it may mean the entire estate; or, second, it may mean the amount of the estate which has actually passed through the hands of the administrator. I am inclined to the latter view. If the other interpretation be placed on it, in the case of an estate of great value in realty and little in personal property, with no debts to pay, the administrator would, nevertheless, be entitled to the statutory compensation on the whole value of the realty, notwithstanding it would pass directly to the heirs, and the administrator would have nothing to do with it. Oregon decisions up to recent date do not seem to have placed a direct interpretation upon the term "accounted for" in the statute from which the Alaska section is taken. Indirectly it was passed upon in Steel v. Holladay, 20 Or. 462, 26 Pac. 562. Holladay had been removed as executor and succeeded by Steel as administrator. Although he had devoted considerable time to the estate and had filed an inventory and appraisement, the Oregon Supreme Court held that he was not entitled to the statutory compensation because all the estate of the decedent was in the custody of receivers during all the time Holladay acted as executor, and therefore—

"No property belonging to the estate came into the possession of appellant as executor, and none is accounted for by him, so there is nothing upon which his commission can be estimated or determined. No commission can be allowed on property which never came into the possession of the executor, nor on property which, although it belonged to the estate, has not been administered on."

In this case the estate came into the constructive posses-
sion of the administratrix, but she never performed any act
of administration beyond filing the inventory and appraisement
and her final account when ordered to do so. She never per-
formed any act of value to the estate, but, on the contrary,
every step she took aside from causing the appraisement
diminished its value. Her conduct throughout was self-serv-
ing, and its only effect upon the estate was to create unneces-
sary costs and expenses which she now seeks to recover with
compensation to herself 'for her inexcusable interference.
Section 1699 of the Alaska Code provides that an adminis-
trator "for his services shall receive such compensation as
the law provides." The dictionaries define service as work
done in the interest or for the benefit of another. This ad-
ministratrix has done no work in the interest or for the bene-
fit of the estate, so that, if it be true that she has technically
"accounted for" its total value, she has performed no service
other than causing the appraisement which could have been
as well done by the widow, who is entitled to the entire es-
tate. If the administratrix were technically entitled to the
statutory compensation with the expenses she asks, it would
be the duty of the court to tax the amount against her as a
diminution of the estate caused by her fault, under the pro-
visions of section 1698. There is no principle of law better
settled than the rule that no person shall be permitted to profit
by his own wrong.

In all the cases cited by counsel for the administratrix in
which compensation was allowed to an administrator notwith-
standing irregularities, the administrator had actually per-
formed necessary services of value to the estate and in gen-
eral had administered the estate. In this case no such serv-
ice has been performed.

Section 1699 of the Code provides that an administrator
shall be allowed all necessary expenses incurred in the care,
management, and settlement of the estate, "including reason-
able attorney's fees in any necessary litigation or matter re-
quiring legal advice or counsel." I agree with the probate
judge that the amount of attorney's fees in this case is rea-
sonable, but the services were not rendered to the estate. The
services were entirely to the administratrix in her enterprise

of meddling in a matter with which she had no concern. Those fees are clearly not a charge against the estate.

The claim for the service and publication of two citations against the widow has no basis in law; they were entirely needless. The statute does not require a citation upon any party interested at the beginning of the administration. The law assumes, no doubt, that all persons interested will appear in court if they wish, and I do not imagine that either Jean Tjosevig or Mrs. Underwood ever deemed it necessary to serve a citation upon the other to get her into court, since both were keeping close watch on the proceedings, as the record shows.

The two publications of citation are still more amazing to contemplate. Since Mrs. Underwood was served personally, there could be no pretense that it was necessary to publish a citation against her in the local newspaper. Counsel for the administratrix argued that this was necessary as notice to the nonresident heirs. It is difficult to consider this argument seriously, inasmuch as it must be evident that in either instance the published citation could not have reached either of them before the time fixed for the hearing, even if they were subscribers to the McCarthy News. The Alaska Code provides for publication of summons in civil actions, and the requirements give ample time for notice of the published summons to reach the party to be served, when his residence is known. If citation on the heirs in Illinois and South Carolina was necessary, by parity of reasoning, as well as by the law of common sense, time enough should have been given for the citation to reach the parties before the hearing. In this case the publications were eight and nine days, respectively, before date of hearing. Further argument as to the uselessness of that expense and the injustice of its allowance seems needless.

Counsel for the administratrix insisted that, although the statute does not expressly provide for it, yet the general law of notice requires that a citation be served. If that view of the law governs this case, Jean Tjosevig never was lawfully appointed administratrix of the Underwood estate, because no notice was ever given to the nonresident heirs. Certainly no one would have the hardihood to argue that publication of

a citation in the local paper eight or nine days before a hearing could be notice to residents of Illinois and South Carolina.

The cost of publishing the notice to creditors in the Cordova Times was properly disallowed for the reason already stated and given by the probate judge in his opinion.

The power of the district court on appeal from the probate court seems to be equitable. It has been so decided by the Oregon Supreme Court in considering the statute from which the Alaska probate law is taken. Section 1597, Alaska Code, provides that an administration "is in the nature of a suit in equity." It is true that probate courts or court commissioners have no equity powers, but I think the meaning of the statute is that probate matters shall be decided on equitable principles. Whatever may be the powers of the probate court, it is true not only in Oregon, but by general law in all the states, that appellate power over the probate court is equitable. The extent to which an appellate court will review or set aside decisions of the lower courts varies in different jurisdictions, due, no doubt, largely to differences in statutes. I can find no precedent directly governing this case, no doubt for the reason that it is probably unprecedented. It would be difficult to find another case like it in the books. It is unusual, not to say extraordinary, for a trustee to demand compensation for causing loss to a beneficiary. An administrator is a trustee, and his primary and almost sole duty is to administer his trust as quickly and economically as possible.

The law of the case appears to be fully stated in 24 C. J. §§ 2431, 2432. The cases cited seem to differ only reaching the same result by different routes, as the following text shows:

"While there are a few cases holding that statutes providing for the allowance of commissions to personal representatives are imperative and that the courts are without discretion to withhold them, the generally accepted view is that the allowance of compensation to an executor or administrator may be refused where a proper ground for such action exists. * * * It has been held proper to refuse to allow any compensation where no services were performed. * * * There is also authority for the view that the representative is not to be deprived of compensation by reason of any fault, mismanagement or neglect, or any loss resulting therefrom, but that he should be charged with the losses and allowed his commissions."

It makes no difference to the administratrix or the estate whether her claim for commission and expenses be refused or it be allowed and charged back to her as a loss due to her fault. I think the more logical rule is to refuse the demands because no service to the estate gave rise to them.

The findings and order of the probate court are approved and affirmed.

⬦⟶See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes