821 P.2d 300 (1991)
In the Matter of the ESTATE OF Ruth B. HOLMES, Deceased.
SHRINERS HOSPITALS FOR CRIPPLED CHILDREN, Claimant-Appellant,
v.
UNITED BANK OF DENVER, Personal Representative-Appellee.
Nos. 90CA1015, 90CA1461.
Colorado Court of Appeals, Div. IV.
May 23, 1991.
Rehearing Denied July 5, 1991.
Certiorari Denied November 25, 1991.
*302 Robert W. Caddes, Denver, for claimant-appellant.
Wade, Ash, Woods, Hill & Guthery, P.C., Walter B. Ash, Denver, for personal representative-appellee.
Opinion by Judge ROTHENBERG.
Shriners Hospitals for Crippled Children appeals the probate court's order finding that attorney fees incurred by United Bank of Denver, as personal representative, were reasonable and were properly paid from the estate. United Bank cross-appeals the probate court's order awarding certain stock to Shriners Hospitals. We affirm in part, reverse in part, and remand with directions.
In November 1982, Ruth B. Holmes executed a will which included the following specific bequest:
"I give and bequeath my 180 shares of Union Pacific Corporation stock and my 124 shares of Deere and Company stock... to Dr. Walter E. Vest, Jr...." (emphasis added)
The will also provided:
"All of the rest, residue and remainder of my estate, real, personal, and mixed, wherever located, I give, devise, and bequeath to the Shriners Hospitals for Crippled Children, a Colorado corporation...."
In her will, the testatrix appointed United Bank as the personal representative of the estate and requested the following:
"I hereby declare it to be my express desire that the special administrator, personal representative and any successor thereof, shall employ either John L. Griffith or Mary C. Griffith ... for legal advice and assistance in probating and carrying out the provisions of this will, they having an intimate knowledge of my affairs, views, and wishes respecting the matters that may arise in the probate of this instrument and the administration of my estate." (emphasis added)
At the time she executed her will, the testatrix actually owned 360 shares of Union Pacific Corporation stock and 248 shares of Deere and Company stock. The additional shares resulted from stock splits that occurred several years before she executed the will.
In August 1986, the testatrix died. In August 1987, United Bank, as personal representative, distributed all of Holmes' stock in Union Pacific Corporation and Deere and Company to Dr. Vest, the specific devisee and advised Shriners Hospitals of the distribution.
In April 1988, Shriners Hospitals demanded one-half of the Union Pacific stock and one-half of the Deere and Company stock, or the value thereof. When United Bank refused, Shriners Hospitals filed a complaint in Denver district court which was dismissed for lack of jurisdiction. Thereafter Shriners Hospitals filed a petition in Denver probate court arguing that United Bank had breached its fiduciary duty by distributing all of the stock to Dr. Vest. United Bank argued that the distribution of all shares was consistent with the testatrix' intent under her will and with applicable Colorado law.
The probate court found that when the testatrix executed the will, she believed that she owned only 180 shares of Union Pacific stock and 124 shares of Deere and Company stock; thus she intended to distribute only that amount to Dr. Vest. The court held that Dr. Vest was entitled to receive only the number of shares specified in the will with the remaining shares passing to Shriners Hospitals as the residuary devisee.
At a supplemental hearing on the issue of damages, the court determined that the shares of stock of both companies were to be valued as of December 16, 1987, the date on which Shriners Hospitals requested that United Bank sell them. The court further found that United Bank, as personal representative, defended the proceeding in good faith and that United Bank's attorney fees were reasonable. Accordingly, it awarded Shriners Hospitals $17,268.21 (the *303 value of the stock) plus interest as damages and ordered that United Bank's present and future attorney fees and costs be paid from the estate as administration expenses.
Shriners Hospitals filed a motion to amend the damage award, arguing that the court erred in awarding attorney fees and costs to the personal representative paid from the estate and in failing to value the stock as of the date United Bank breached its fiduciary duty by distributing all shares of stock to Dr. Vest. In a minute order, the court stated that it had not found any breach of fiduciary duty by United Bank but, rather, had based its ruling upon United Bank's good faith mistake of law. The court further found that United Bank's fees and costs were properly paid from the estate and denied Shriners Hospitals' motion to amend.

I.

CROSS-APPEAL
We initially address United Bank's cross appeal as its disposition affects the outcome of Shriners Hospitals' appeal.

A.
United Bank first argues that a proper interpretation of § 15-11-607, C.R.S. (1987 Repl.Vol. 6B) required the probate court to award Dr. Vest the shares of stock resulting from the stock splits. We agree.
Section 15-11-607 provides in pertinent part:
"(1) If the testator intended a specific devise of certain securities rather than the equivalent value thereof, the specific devisee is entitled ... to:
....
"(b) Any additional or other securities of the same entity owned by the testator by reason of action initiated by the entity excluding any acquired by exercise of purchase options...."
In its order, the probate court stated:
"As to interpretation of Section 15-11-607 (1)(b), C.R.S. [1987 Repl. Vol. 6B], the Court believes that it must refer only to changes in securities after a will has been executed, and therefore the statute does not apply to this situation where the stock splits which accounted for the increased number of shares occurred prior to the execution of the will by the Testatrix. The Bank made a mistake in its interpretation of the application of this statute to the facts of this case."
If the language of a statute is plain and its meaning is clear, it must be applied as written. Williams Natural Gas Co. v. Mesa Operating Limited Partnership, 778 P.2d 309 (Colo.App.1989).
The statute at issue here is identical to Uniform Probate Code § 2-607(a)(2) and requires only that the additional shares originate by action of the company, not by action of the shareholder. This requirement is logical since if a shareholder takes some action to purchase additional shares, it may reasonably be inferred that the shareholder knew he or she owned such shares. In contrast, if stock splits are initiated by the company, the shareholder may not be aware of the extent of his or her stock holdings.
Thus, under the plain language of the statute and absent a contrary intent by the testatrix, a specific devisee (such as Dr. Vest) is entitled to receive any additional shares resulting from action "initiated by the entity," i.e., the company issuing the stock. The statute does not contain a requirement that the additional shares be acquired after the date the will is executed, rather than before such date.

B.
In construing a will, a court must ascertain the intent of the testatrix by examining the will in its entirety. The court must then carry out that intent unless it is contrary to law or public policy. See In re Estate of Bennett, 789 P.2d 446 (Colo.App. 1989).
If the terms of a will are unambiguous, extrinsic evidence may not be considered to determine the testatrix' intent. However, if the language of the will, although *304 clear on its face, is susceptible of more than one meaning when applied to the extrinsic facts to which it refers, a latent ambiguity exists and extrinsic evidence must be considered. See In re Estate of Gross, 646 P.2d 396 (Colo.App.1981).
Here, the testatrix specifically stated that she was devising "my 180 shares of Union Pacific Corporation stock and my 124 shares of Deere and Company stock" to Dr. Vest, as opposed to "180 shares of my Union Pacific Corporation stock" or "124 shares of my Deere and Company stock." See Heinneman v. Colorado College, 150 Colo. 515, 374 P.2d 695 (1962). In reality, the testatrix owned 360 shares of Union Pacific stock and 248 shares of Deere and Company stock as a result of stock splits which had occurred before she executed her will. Therefore, the trial court properly found that a latent ambiguity existed and, in accordance with the parties' stipulation, admitted the deposition testimony of the attorney who drafted the will, Mary Griffith.
Griffith, who was also the testatrix' close friend, was one of the persons the testatrix requested that her personal representative employ. She testified that when she drafted the will, the testatrix told her (incorrectly) that she owned 180 shares of Union Pacific stock and 124 shares of Deere and Company stock, and intended to leave "all of her stock holdings in Deere and Company and Union Pacific to Dr. Vest." Her further testimony was that, in drafting the will, she set forth the number of shares for descriptive purposes only. She did not intend the numbers set forth to be a limitation on the shares bequeathed to Dr. Vest. There was no other evidence of the testatrix' intent.
Accordingly, the uncontroverted evidence here was that the testatrix intended to devise all of her shares of stock to Dr. Vest, and since it is undisputed that the additional shares of stock resulted from company initiated stock splits, the probate court erred in distributing half of the shares to Shriners Hospitals. See Heinneman v. Colorado College, supra.

II.

SHRINERS HOSPITALS' APPEAL
Shriners Hospitals contends that the probate court erred in approving payment of the personal representative's attorney fees and costs from the estate.
Section 15-12-720, C.R.S. (1987 Repl. Vol. 6B) provides:
"If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not, he is entitled to receive from the estate his necessary expenses and disbursements including reasonable attorneys' fees incurred."
The only limitation contained in § 15-12-720 is that the personal representative must have defended the proceeding in good faith and the expenses incurred must have been necessary and reasonable to the administration of the estate. In re Estate of Phipps, 713 P.2d 412 (Colo.App.1985).

A.

GOOD FAITH
The probate court found that United Bank distributed the shares of stock and defended the action in good faith. This finding is clearly supported by the record and is consistent with our holding here that United Bank properly distributed all shares to Dr. Vest. Therefore, it will not be disturbed on appeal. See Zuments v. Colorado High School Activities Ass'n, 737 P.2d 1113 (Colo.App.1987).

B.

REASONABLENESS
Section 15-12-721(2), C.R.S. (1987 Repl. Vol. 6B) provides the factors a court should consider in determining whether a personal representative's attorney fees are reasonable, namely:
"(a) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the service properly;

*305 (b) The likelihood, if apparent to the personal representative, that the acceptance of the particular employment will preclude the person employed from other employment;
(c) The fee customarily charged in the locality for similar services;
(d) The amount involved and the results obtained;

(e) The time limitations imposed by the personal representative or by the circumstances;
....
(g) The experience, reputation, and ability of the person performing the services." (emphasis added)
At the hearing, United Bank's expert witness testified that he considered all of the factors listed in § 15-12-721(2) and the time expended and rates charged were consistent with the requirements necessary to conduct the litigation. Since issues of credibility and the probative effect of the evidence are reserved for the trial court and not this court, we decline to disturb the probate court's finding that the initial attorney fees were reasonable. See In re A.J., 757 P.2d 1165 (Colo.App.1988).
The court however, made no such finding as to the reasonableness of United Bank's future attorney fees and costs and Shriners Hospitals has raised this issue on appeal. At oral argument counsel for Shriners Hospitals represented that the total attorney fees arising from this litigation now constitute more than twice the amount already approved by the probate court, and over four times the amount involved in the litigation itself. According to Shriners Hospitals, 79% is attributable to the attorneys for United Bank. (We note that the probate court also awarded the attorney fees for Shriners Hospital and for Mary Griffith to be paid from the estate. Those fees are not disputed on appeal.)
We therefore remand for a determination of whether United Bank's future fees are justified. See §§ 15-12-721(2)(a) and (d). See also In re Estate of Painter, 671 P.2d 1331 (Colo.App.1983).

III.
In view of our finding that United Bank acted correctly in distributing all of the testatrix' shares of stock to Dr. Vest, Shriners Hospitals' allegations of a breach of fiduciary duty by United Bank and a miscalculation of damages by the court are without merit. We decline to rule on the issue of attorney fees incurred by this appeal since the issue of all additional attorney fees will be resolved by the probate court.
The order is affirmed as to the holding that United Bank is entitled to receive reasonable attorney fees from the estate, and the cause is remanded for further proceedings to establish the appropriate amount of such fees. The order is reversed as to distribution of the stock in question.
STERNBERG, C.J., and REED, J., concur.