Iris ENDERS, Appellant,

v.

Connie PARKER, Personal Representative of the Estate of Joel W. Kottke, Appellee.

Connie Parker, Personal Representative of the Estate of Joel W. Kottke, Cross–Appellant,

v.

Iris Enders and Ralph Kottke, Cross–Appellees.

Nos. S–9341, S–9391.

Supreme Court of Alaska.

March 21, 2003.

Amy's placement with her foster family. This claim likewise is moot.

**21.** *See, e.g., D.E.D. v. State,* 704 P.2d 774, 780 (Alaska 1985).

Timothy R. Byrnes, Hughes Thorsness Powell Huddleston & Bauman LLC, Anchorage, for Appellant/Cross–Appellee Enders.

C. James Mathis, Davis & Davis, P.C., Anchorage, for Appellee/Cross–Appellant.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION ON REHEARING*

CARPENETI, Justice.

## I. INTRODUCTION[1]

Iris Enders unsuccessfully challenged the admission into probate of Joel Kottke's 1997 will, which named his companion Connie Parker as personal representative, on the grounds of undue influence and insane delusions. We previously upheld the superior court's rejection of that challenge.

Iris Enders now appeals the superior court's denial of her AS 13.16.435 claim for

---

**1.** This opinion replaces the opinion issued on   August 10, 2001.

costs and attorney's fees arising out of her unsuccessful prosecution of the will contest. Connie Parker cross-appeals the superior court's refusal to award her attorney's fees and costs under Alaska Civil Rules 82(b) and 79(b). Because AS 13.16.435 does not require that a personal representative or nominated personal representative's actions benefit the estate before the personal representative can recover expenses, we vacate the superior court's denial of Enders's AS 13.16.435 claim. Because the superior court did not make specific findings as to whether Enders prosecuted the will contest in good faith, we remand this case for specific findings on this issue. Because the attorney's fees and costs provisions of Civil Rules 82(b) and 79(b) are inapplicable to probate proceedings, we affirm the superior court's denial of Parker's motion seeking attorney's fees and costs under these rules.

## II.  FACTS AND PROCEEDINGS

### A.  Facts

Joel Kottke executed a will in 1983, nominating his stepdaughter Iris Enders as successor to his wife Martha as personal representative and leaving fifty percent of his estate to his siblings and fifty percent to Martha's children. After Martha's death in 1991, Kottke entered into a relationship with Connie Parker. Parker lived with Kottke and cared for him when he was diagnosed with cancer.

In June 1997, four months before his death, Kottke executed a new will disinheriting his siblings and stepchildren in favor of Parker.[2] The 1997 will nominated Connie Parker as Kottke's personal representative. After Kottke's death in October 1997, Parker obtained appointment as special administrator and sought to probate the 1997 will. Enders and Joel's brother Ralph Kottke then filed a petition to set aside the 1997 will

based on the theories of undue influence and insane delusions.

After a seven-day evidentiary hearing in July 1998, Superior Court Judge Sen K. Tan upheld the 1997 will and appointed Parker as Kottke's personal representative. Enders and Ralph Kottke appealed to this court. We affirmed the superior court's thoughtful and thorough decision.[3]

### B.  Proceedings

Several weeks after the evidentiary hearing, Enders served Parker with a claim for administrative expenses incurred in the litigation of the will contest pursuant to AS 13.16.435. Enders's claim itemized expenses of $32,987.07; a later supplement itemized further expenses of $14,337.71. Parker did not formally respond to this claim.

On September 21, 1998 Enders filed a petition for allowance of her AS 13.16.435 claim with the superior court. Parker opposed the petition and also moved for costs and attorney's fees under Civil Rules 79 and 82. The superior court denied Enders's petition on the grounds that her claim did not benefit Kottke's estate. The court also denied Parker's motion, ruling that it would not award fees and costs under the civil rules because there is a specific statutory scheme for awarding costs and fees for will contests.

Enders appeals the denial of her petition. Parker cross-appeals the denial of her motion for costs and attorney's fees.

## III.  STANDARD OF REVIEW

Enders challenges the superior court's interpretation of AS 13.16.435; Parker challenges the superior court's interpretation of Civil Rules 79 and 82. We review a trial court's interpretation of statutes and court rules under the independent judgment standard.[4] When construing the meaning of a statute under this standard, we "look to

---

**2.**  The 1997 will left Parker an interest in Kottke's Anchorage property, left Enders an interest in Kottke's property in Kenai, and left Parker the residuary estate under a trust system that was effectively a life estate.

**3.**  *In re Estate of Kottke*, 6 P.3d 243, 247 (Alaska 2000).

**4.**  *Fancyboy v. Alaska Village Elec. Coop., Inc.*, 984 P.2d 1128, 1132 (Alaska 1999) (stating that we apply our independent judgment to interpretation of statutes); *see also Compton v. Chatanika Gold Camp Props.*, 988 P.2d 598, 601 (Alaska 1999).

'the meaning of the language, the legislative history, and the purpose of the statute' "[5] and "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[6]

## IV. DISCUSSION

### A. Alaska Statute 13.16.435 Governs Recovery from the Estate of Expenses Incurred in Estate Litigation; It Does Not Impose a Requirement that the Litigation Benefit the Estate.

### 1. Alaska Statute 13.16.435 does not contain a benefit-to-the-estate requirement.

After considering "whether the actions of the personal representative benefitted the estate," the superior court denied Enders's claim on the grounds that her "conduct fails to meet the requirement that a personal representative must act to benefit the estate." But AS 13.16.435 contains no benefit-to-the-estate requirement.

■ We have not yet interpreted AS 13.16.435. When interpreting a statute, we look to its language "construed in light of the purpose of its enactment."[7] If the language of the statute is unambiguous and expresses the legislature's intent, and if no ambiguity is revealed by its legislative history, we will not modify or extend the statute by judicial construction.[8] "Where a statute's meaning appears clear and unambiguous, ... the party asserting a different meaning bears a correspondingly heavy burden of demonstrating contrary legislative intent."[9]

The language of AS 13.16.435 is unambiguous.[10] It states that a personal representative or nominated personal representative who has prosecuted or defended a probate action in good faith is entitled to recover all necessary expenses and disbursements, regardless of whether he or she prevailed in the action. Nothing in the text of the statute suggests that a court has the discretion to determine whether a personal representative's actions benefitted the estate before awarding a personal representative his or her administrative expenses.

Our examination of the legislative intent and policies behind the statute and the Uniform Probate Code [11] (UPC) yields nothing that meets the burden of demonstrating contrary legislative intent. Alaska Statute 13.16.435 is taken directly from the UPC, which Alaska adopted in 1972.[12] Alaska Statute 13.06.010(a) states that the provisions comprising the Alaska UPC "shall be liberally construed and applied to promote their underlying purposes and policies." Alaska Statute 13.06.010(b) sets out five such purposes and policies.[13] Two purposes support

**5.** *Fancyboy*, 984 P.2d at 1132 (quoting *Muller v. B.P. Exploration (Alaska), Inc.*, 923 P.2d 783, 787 (Alaska 1996)).

**6.** *Id.* (citing *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

**7.** *Yahara v. Constr. & Rigging, Inc.*, 851 P.2d 69, 72 (Alaska 1993) (quoting *J & L Diversified Enters., Inc. v. Municipality of Anchorage*, 736 P.2d 349, 351 (Alaska 1987)).

**8.** *Id.* (citing *Alaska Pub. Employees Ass'n v. City of Fairbanks*, 753 P.2d 725, 727 (Alaska 1988) (quoting *State, Dep't of Natural Res. v. City of Haines*, 627 P.2d 1047, 1049 (Alaska 1981))).

**9.** *University of Alaska v. Tumeo*, 933 P.2d 1147, 1152 (Alaska 1997).

**10.** AS 13.16.435 provides:

**Expenses in estate litigation.** If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not, that person is entitled to receive from the estate necessary expenses and disbursements including reasonable attorney fees incurred.

**11.** Unif. Probate Code § 3–720 (amended 1993), 8 U.L.A. 184 (1998).

**12.** Ch. 78, § 1, SLA 1972. The statutes comprising the Uniform Probate Code in Alaska are AS 13.06 through 13.36. *See* AS 13.06.005.

**13.** AS 13.06.010(b) provides:

The underlying purposes and policies of AS 13.06–AS 13.36 are to
(1) simplify and clarify the law concerning the affairs of decedents, missing persons, protected persons, minors, and incapacitated persons;
(2) discover and make effective the intent of a decedent in distribution of the decedent's property;
(3) promote a speedy and efficient system for liquidating the estate of the decedent and

the conclusion that no benefit-to-the-estate requirement should be found;[14] only one even arguably supports the opposite conclusion.[15] Thus, Parker has not met her heavy burden of demonstrating a legislative intent that is contrary to the clear and unambiguous words of the statute.

■ In conclusion, the text of AS 13.16.435 contains no benefit-to-the-estate requirement. The legislature's expressed policies and purposes in enacting the statute do not suggest such a requirement. Accordingly, we hold that AS 13.16.435 does not require a personal representative or a nominated personal representative to show that a will contest has benefitted the estate before he or she may recover expenses under the statute.

We have seen that AS 13.16.435 does not require a benefit-to-the-estate analysis. We turn now to what the statute does require. It imposes only three requirements for the recovery from the estate of expenses incurred in estate litigation:

> If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not, that person is entitled to receive from the estate necessary expenses and disbursements including reasonable attorney fees incurred.

Thus, in order for the claimant to recover, (1) he or she must be a personal representative or nominated as a personal representative; (2) he or she must have brought or defended the proceeding in good faith; and (3) expenses must be "necessary" and attorney's fees "reasonable."[16] It is immaterial whether the party seeking the expenses prevailed in the action; if the requirements are met, the party is entitled to receive reimbursement from the estate for expenses incurred in the litigation, including attorney's fees.[17]

### 2. Enders is a nominated personal representative for the purposes of AS 13.16.435.

■ Alaska Statute 13.16.435 explicitly provides that a nominated personal representative can recover expenses. Enders was nominated as a personal representative under Kottke's 1983 will; therefore, she is eligi-

---

making distribution to the decedent's successors;
  (4) facilitate use and enforcement of certain trusts; and
  (5) make uniform the law among the various jurisdictions.
Because purposes (1) and (4) are not relevant to our analysis, we do not discuss them here.

**14.** Subsection (2) ["discover and make effective the intent of a decedent"] supports this conclusion because a good faith will contest can be effective in the discovery of a decedent's intent. *See Watts v. Newport,* 151 Fla. 209, 9 So.2d 417, 421 (1942) (finding sufficient justification in having "both the proponent and the heirs ... represented by able and industrious attorneys acting in good faith and earnestly representing their respective sides of the controversy in their capacity [as] attorneys for their respective clients and also as honorable officers of the court, to the end that the question of the validity of the purported will be thoroughly tried out and determined").

Subsection (5) ["make uniform the law among the various jurisdictions"] likewise supports the conclusion because AS 13.16.435 is a verbatim adoption of section 3–720 of the UPC and because case law from other UPC jurisdictions with identical or nearly identical statutes overwhelmingly supports the notion that AS 13.16.435 does not contain a benefit requirement. *See, e.g., In re Estate of Killen,* 188 Ariz. 569, 937 P.2d 1375,

1380–81 (Ariz.App.1996); *In re Estate of Holmes,* 821 P.2d 300, 304 (Colo.App.1991); *Estate of Rosen,* 520 A.2d 700, 701 (Me.1987); *In re Estate of Evenson,* 505 N.W.2d 90, 92 (Minn.App.1993); *In re Estate of Watkins,* 243 Neb. 583, 501 N.W.2d 292, 296 (1993); *In re Estate of Frietze,* 126 N.M. 16, 966 P.2d 183, 187 (N.M.App.1998). Nearly all of these states adhere to a literal reading of section 3–720, imposing only the requirements found in it—that the claimant be either a personal representative or a nominated personal representative, that he or she have prosecuted the action in good faith, and that charges be reasonable and necessary. *See, e.g., Holmes,* 821 P.2d at 304 (citation omitted); *Evenson,* 505 N.W.2d at 92; *Watkins,* 501 N.W.2d at 296; *Frietze,* 966 P.2d at 187. *But see Estate of Brideau,* 458 A.2d 745, 747 (Me.1983) (stating that under Maine statute, party who unsuccessfully contests will on basis of undue influence cannot recover attorney's fees from estate).

**15.** Subsection (3) ["promote a speedy and efficient system for liquidating the estate ... and making distribution"] arguably may be impeded by a system that allows a challenger to recover costs and fees, thereby encouraging challenges and delaying liquidation and distribution.

**16.** AS 13.16.435.

**17.** *Id.*

ble to receive administrative expenses from Kottke's estate under the statute.[18]

### 3. The superior court made insufficient findings as to whether Enders brought the will contest in good faith.

Because Enders meets the nominated personal representative requirement in AS 13.16.435, she can recover her necessary and reasonable expenses if she brought the will contest in good faith. The issue of good faith was extensively litigated below, but the superior court did not make specific findings on it. Instead, the court rested its decision to deny fees under AS 13.16.435 on its conclusion that Enders's actions did not benefit the estate.[19] As we have seen, the court's reliance on a benefit-to-the-estate requirement was error. We turn now to the sufficiency of the court's findings on good faith.

Enders argues that she must recover unless the superior court makes an explicit finding that she acted in bad faith, and that it did not do so. While the superior court used strongly critical language of Enders in its decision,[20] the court's findings are not explicit on the question of good faith. Because the findings erroneously focused on the question whether Enders's actions benefitted the estate, we are unable to say that the court would have explicitly found a lack of good faith. We must remand to the superior court for findings, sufficiently specific or detailed to allow for meaningful appellate review,[21] on the question whether Enders acted in good faith.[22] To aid the court in this task, we note the following.

Although "good faith" is not defined in the probate statutes, the statutory obligations of the personal representative shed light on the meaning of that term. A personal representative is a fiduciary who is statutorily obligated to "observe the standards of care applicable to trustees ... [and who] is under a duty to settle and distribute the estate ... as expeditiously and efficiently as is consistent with the best interests of the estate."[23] "[A] fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence."[24] The fiduciary duty is "the highest standard of duty implied by law."[25] And it is statutorily recognized as an obligation of the personal representa-

18. A personal representative, duly appointed, may contest another will that, if valid, would supersede the one naming him, while enjoying the protection of section 3–720. UNIFORM PROBATE CODE PRACTICE MANUAL 321 (2d ed.1977).

19. At various places in its decision, the superior court appeared to rest its decision to deny fees on its conclusion that Enders's action did not benefit the estate. For example, the court said "... the court must evaluate whether the actions of the personal representative benefitted the estate." At another point it said, "Ms. Enders' claim did not bring about an enhancement in value or an increase in the assets of the estate."

20. At no stage pre-trial or at trial did Ms. Enders claim that she was acting as personal representative. She makes this claim only after trial.... The entire tenor of Ms. Enders' case was a contest for her own personal benefit and the benefit of her family, not for the estate.... The real impetus behind the litigation is the Enders[] family['s] personal animosity and disdain for Connie Parker, the primary beneficiary of Joel W. Kottke's 1997 will. This immense distaste for Ms. Parker has propelled Ms. Enders to drain Mr. Kottke's modest estate through litigation rather than have Ms. Parker benefit from the estate. Her intervention in the probate of the 1997 [will] has only hindered the disposition of Mr. Kottke's estate in a manner that comported with his testamentary intent.

No. 3AN–97–1124 P (Alaska Super., September 21, 1999).

21. *S.L. v. J.H.*, 883 P.2d 984, 986 (Alaska 1994) (citing *Murray v. Murray*, 856 P.2d 463, 466 (Alaska 1993)).

22. In the event that the superior court finds that Enders acted in good faith, it should proceed to determine whether, pursuant to AS 13.16.435, Enders's claimed expenses and disbursements were "necessary," and whether her incurred attorney's fees were "reasonable." We interpret the statute to allow the court to award only those disbursements that were necessary and only those attorney's fees that were reasonable.

23. AS 13.16.350(a).

24. *Paskvan v. Mesich*, 455 P.2d 229, 232 (Alaska 1969).

25. BLACK'S LAW DICTIONARY 625 (6th ed.1990).

tive of the estate of a decedent.[26] Alaska Statute 13.16.350(a) requires that a personal representative use her authority "for the best interests of successors to the estate." In the context of two competing wills with different personal representatives, it is to be expected that the "successors" will not be identical. Each personal representative thus must act for the best interests of the successors named in the will which each personal representative is respectively seeking to uphold. We hold that "good faith" under AS 13.16.435 incorporates the statutory requirement that a personal representative act with the intent to benefit successors named in the instrument the personal representative seeks to uphold, but does not incorporate a requirement that the acts of the personal representative actually benefit the estate.[27] In making its findings concerning good faith, the superior court should consider whether Enders had reasonably arguable grounds to challenge the 1997 will. Presence of such grounds would imply good faith on her part; absence of such grounds would imply a lack of good faith.

### B. Rule 82(b) Attorney's Fees and Rule 79 Costs

██ On cross-appeal, Parker contends that she is entitled to an award of Civil Rule 82(b)(2) attorney's fees and Rule 79(b) costs against Enders because she was the prevailing party in the will contest. We disagree.

Civil Rule 82 provides for an award of attorney's fees to the prevailing party "[e]xcept as otherwise provided by law."[28] Here, the legislature has expressly provided otherwise by law. It has provided that a designated personal representative can recover "necessary expenses and disbursements including reasonable attorney fees incurred."[29] Therefore, Civil Rule 82 does not apply in this case. If a specific statutory scheme for

attorney's fees exists, Civil Rule 82 does not apply.[30] And since the statute also clearly covers costs incurred in the litigation, Civil Rule 79 likewise does not apply.

Because AS 13.16.435 sets out a specific statutory scheme for awarding attorney's fees, Parker is not entitled to an award of attorney's fees and costs under Civil Rules 82(b) and 79(b).

## V. CONCLUSION

Because AS 13.16.435 does not contain a requirement that a nominated personal representative's actions benefit the estate before the nominated personal representative can recover expenses from the estate, we VACATE the superior court's denial of Enders's AS 13.16.435 claim. We REMAND this case for specific findings as to whether Enders prosecuted the will contest in good faith and a redetermination of the AS 13.16.435 claim.

Parker's cross-appeal is meritless; therefore, we AFFIRM the superior court's denial of Parker's motion for attorney's fees and costs under Civil Rules 82(b) and 79(b).

BRYNER, Justice, with whom FABE, Chief Justice, joins, dissenting.

BRYNER, Justice, with whom FABE, Chief Justice, joins, dissenting.

In our original ruling in this appeal, we affirmed the denial of Enders's application for attorney's fees, unanimously concluding that the superior court adequately addressed the issue of Enders's bad faith. With scarcely a glance at our original reasoning and without explaining its change of heart, today's opinion on rehearing turns about-face and vacates the superior court's attorney's fee ruling; it now concludes that the superior court's findings on bad faith were insufficient. Our first opinion reached a sound,

---

**26.** AS 13.16.350(a).

**27.** *Supra* Part IV.A.3.

**28.** Alaska R. Civ. P. 82(a).

**29.** AS 13.16.435.

**30.** *Cf. Bobich v. Hughes,* 965 P.2d 1196, 1200 (Alaska 1998) (stating that statutory attorney's fees provision awarding full fees ordinarily take

precedence over Rule 82 provision awarding partial attorney's fees); *Whaley v. Alaska Workers' Comp. Bd.,* 648 P.2d 955, 959 (Alaska 1982) (holding that prevailing employer could not obtain attorney's fees because granting such fees would undermine purposes of Alaska Workers' Compensation Act and limit claimant's ability to seek appellate relief).

well-reasoned conclusion, and it speaks for itself as my view of a correct resolution of this case.[1] But the court's new reasoning does not support today's opinion and thus requires additional comment.

The opinion on rehearing begins by noting that "the superior court denied Enders's claim on the grounds that her 'conduct fails to meet the requirement that a personal representative must act to benefit the estate.' "[2] Construing the superior court's remark to mean that the court applied a benefit-to-the-estate-requirement to Enders's request for fees, the opinion holds that AS 13.16.435 imposes no such requirement and that the statute allows a nominated personal representative to recover reasonable attorney's fees necessarily incurred in good-faith litigation, regardless of whether it results in actual benefit to the estate.[3]

Having so decided, the opinion on rehearing holds that the superior court erred in applying a benefit-to-the-estate requirement and in neglecting to make explicit findings on good faith:

> The issue of good faith was extensively litigated below, but the superior court did not make specific findings on it. Instead, the court rested its decision to deny fees under AS 13.16.435 on its conclusion that Enders's actions did not benefit the estate. As we have seen, the court's reliance on a benefit-to-the-estate requirement was error.... While the superior court used strongly critical language of Enders in its decision, the court's findings are not explicit on the question of good faith. Because the findings erroneously focused on the question whether Enders's actions benefitted the estate, we are unable to say that the court would have explicitly found a lack of good faith.[4]

But this holding unfairly accuses the superior court of applying a benefit-to-the-estate requirement and overlooks its unequivocal findings that Enders acted in bad faith. In the early part of its fee decision, the superior court did discuss cases that nominally apply a benefit-to-the-estate requirement in awarding attorney's fees. But the court nowhere suggested that it construed these cases as allowing it to rule that conferral of an actual benefit on the estate was a prerequisite to— or even an important factor bearing on—an award of fees under AS 13.16.435. To the contrary, a careful review of the superior court's ruling shows that the court believed just the opposite.

In beginning its analysis, the superior court cited an early Alaska precedent, *In re Underwood's Estate.*[5] The court in *Underwood* did not adopt the actual-benefit rule— that is, it did not require a financial gain to the estate or success in litigation as a condition of reimbursing expenses; rather, it more narrowly recognized that reimbursement would be allowed for any necessary work done "in the interest or for the benefit of the estate."[6] Here, the superior court recognized that *Underwood* stood for this proposition, describing that case as holding that attorney's fees are allowed "if the services are rendered for the benefit of the estate." Thus, in beginning its fee decision in the present case, the superior court unquestionably understood that AS 13.16.435 did not require Enders to prevail on her claim or to have actually advanced the estate's financial interests in order to recover fees. Although the court expressly recognized that Enders's unsuccessful claim "did not bring about an enhancement in value or an increase in the assets of the estate," the court did not stop its analysis there; it looked farther, to the underlying purposes of Enders's action, noting that the relevant inquiry was whether

1. Because this court's order granting rehearing, from which I dissented, withdrew the original opinion from publication and precluded its citation "for any purpose," *see* Order Granting Pet. for Reh'g, S–9341/9391 (April 4, 2002), the opinion has now been withdrawn from the bound volumes of the Alaska Reporter. The original opinion nonetheless remains available for historical reference as Westlaw document 28 P.3d 280.

2. Op. on Reh'g at 14.

3. Op. on Reh'g at 14–16.

4. Op. on Reh'g at 16 (internal footnote and paragraphing omitted).

5. 6 Alaska 673 (D.Alaska. Terr.1922).

6. *Id.* at 678.

Enders's action against the estate was motivated by a desire to discover Kottke's true testamentary intent and to achieve a proper disposition of the estate's property.

The court thus proceeded to describe in depth the extensive circumstantial evidence revealing Enders's motives for pursuing the action. The court observed, for example, that

> Joel W. Kottke took every precaution to ensure that his 1997 will would be probated. He sought independent legal counsel by a competent probate lawyer, he had himself videotaped while announcing his testamentary intentions, and he was not hasty in making his decisions. Joel Kottke took all these steps because he was concerned that Ms. Enders would challenge his 1997 will. When Ms. Enders discovered that Mr. Kottke had changed his 1983 will, she immediately questioned his testamentary capacity. Dr. Webb, Mr. Kottke's oncologist, and John Burke, a representative of the Division of Senior [S]ervices looked into Mr. Kottke's testamentary capacity and freedom from undue influence. Both reported that Mr. Kottke was not suffering [from] insane delusions and that he was not the subject of undue influence by Connie Parker. Yet Ms. Enders continued to pursue her claims.
>
> At no stage pre-trial or at trial did Ms. Enders claim that she was acting as personal representative. She makes this claim only after trial.

The facts of the case led the superior court to conclude "that Ms. Enders failed to act in the estate's interest." Hence, in denying Enders's motion for fees, the court did not dwell on the obvious fact that Enders had lost her case or rule that a personal representative's act must *benefit* the estate. Instead, the court specifically said that a personal representative "must *act to* benefit the estate." [7] The distinction is crucial. The former proposition—that a personal representative "must benefit the estate"—describes the benefit-to-the-estate requirement, which would allow a fee award only when an action's outcome actually benefits the estate. In contrast, the latter proposition—that the personal representative "must act to benefit the estate"—looks to the personal representative's *motives* for acting; it simply requires a suit to be brought *for the purpose of* benefiting the estate. In concluding that Enders failed to "act to benefit the estate," then, the superior court simply found that Enders had sued for ulterior motives, and not for the purpose of benefiting the estate. Because the court's findings as to Enders's motivations and purposes did not pin her fee award to a successful outcome, they did not amount to an incorrect application of the benefit-to-the-estate requirement.

This interpretation of the trial court's reasons for denying fees finds strong confirmation in other specific factual findings. The trial court expressly found that "Ms. Enders'[s] case was a contest for her own personal benefit," that "[t]he real impetus behind the litigation is the Enders[ ] family['s] personal animosity and disdain for Connie Parker," and that "[t]his immense distaste for Ms. Parker has propelled Ms. Enders to drain Mr. Kottke's modest estate through litigation."

Although the opinion on rehearing dismisses these statements as nothing more than "strongly critical language," [8] they are certainly more than that: they are express, affirmative findings that Enders's conduct was motivated by her overriding animosity and self-interest and not by a good faith desire to benefit the estate. These findings are supported by substantial evidence, and they are not clearly erroneous. Moreover, the superior court's earlier findings rejecting Enders's will contest on its merits foreshadow and bolster its later findings concerning Enders's motives for suing; [9] and we have

7. Emphasis added.

8. Op. on Reh'g at 16.

9. *See In re Estate of Kottke,* 6 P.3d 243, 248–49 (Alaska 2000). In these earlier findings the superior court observed that, although Parker and Kottke "were intimately involved in each other's lives," members of Enders's family "never took to Connie Parker.... The real crux is the alienation of affection in the relationship between Connie Parker and [Enders's] family," who "did not accept Connie Parker[.]" *Id.* at 248. The superior court described the Enders family as "outspoken in its animosity towards Connie Par-

previously reviewed and upheld those earlier findings, declaring them "exemplary" and free of error.[10]

None of these findings touches on the issue of whether Enders's challenge to Kottke's will actually benefited the estate. To the contrary, they all bear solely on Enders's motives for prosecuting her action, thus belying the conclusion that the superior court denied Enders's application because her suit ultimately failed to provide a benefit to the estate. Yet despite the strength of the record against that conclusion, today's opinion fails to point to any findings supporting its theory that the superior court attached undue importance to Enders's failure to prevail. Indeed, had the superior court believed that AS 13.16.435 required proof of actual benefit, it could simply have rejected Enders's fee application as a matter of law on the ground that she had failed to prevail, without considering extensive argument on the issue of her good faith or making detailed findings concerning her motives for suing.

I thus see no sound basis to accuse the superior court of erroneously applying a benefit-to-the-estate requirement, and no good reason to doubt that it properly based its denial of fees on its evaluation of Enders's ulterior motives for suing.

The opinion on rehearing separately questions the sufficiency of the superior court's

findings concerning bad faith: "Because the findings erroneously focused on the question whether Enders's actions benefitted the estate," the opinion professes, "we are unable to say that the court would have explicitly found a lack of good faith."[11] But any doubts based on a supposed lack of "explicit" findings are groundless.[12] For despite the superior court's failure to recite the words "bad faith" explicitly, its ruling leaves no uncertainty as to its view on the issue; the ruling incorporates explicit factual findings that mirror the relevant definition of bad-faith litigation.

As the opinion on rehearing acknowledges, AS 13.16.435's good faith requirement reflects the Alaska Probate Code's recognition that a personal representative serves in a fiduciary role.[13] Thus, in claiming to act as a nominated personal representative, Enders placed herself under the "special confidence" of this relationship and, "in equity and good conscience, [was] bound to act in good faith and with due regard to the interests of the one imposing the confidence."[14] Under AS 13.16.350(a) Enders owed her fiduciary duty to Kottke's estate; that duty required her to serve the best interests of the estate and of Kottke's successors; and it obliged her to observe the same statutory standards of care that trustees must observe in managing trust assets.[15] Alaska's trust laws require trustees

---

ker as early as 1993, with the most favorable testimony from the Enders family being that Connie Parker was 'tolerable.' " *Id.* According to the court, "some of the worst words in the case were spoken by Greg Enders in his testimony, where he described Connie Parker as a 'decrepit old woman.' " *Id.* at 248–49. By the time Kottke died in 1997, the court found, the situation had evolved into a "feud" that had led to "a failing relationship" between Enders and Kottke. *Id.* at 249. "[E]ven at the time of Joel Kottke's death," the court noted, "there was a dispute as to who was and was not family, rather than an acceptance that Joel Kottke had many families." *Id.*

**10.** *Id.* at 245.

**11.** Op. on Reh'g at 16.

**12.** To the extent that the opinion's doubts stem from the superior court's asserted focus on whether Enders's actions benefited the estate, this dissent has addressed the issue by demonstrating that the superior court did not errone-

ously focus on the benefit-to-the-estate requirement.

**13.** Op. on Reh'g at 16–17.

**14.** *Paskvan v. Mesich*, 455 P.2d 229, 232 (Alaska 1969).

**15.** AS 13.16.350(a) states:

A personal representative is a fiduciary who shall observe the standards of care applicable to trustees under AS 13.36.225–13.36.290. A personal representative is under a duty to settle and distribute the estate of the decedent in accordance with the terms of any probated and effective will and AS 13.06–AS 13.36, and as expeditiously and efficiently as is consistent with the best interests of the estate. A personal representative shall use the authority conferred by AS 13.06–AS 13.36, the terms of the will, if any, and any order in proceedings to which the personal representative is party for the best interests of successors to the estate.

to act with loyalty and impartiality.[16] Accordingly, Enders had a duty to act "solely in the interest" of Kottke's estate and its beneficiaries and to do so "impartially . . ., taking into account any differing interests of the beneficiaries."[17]

The court's opinion on rehearing correctly warns that, to meet these obligations as a nominated personal representative in a contest between two competing wills, Enders needed only to act with intent to benefit those successors named in the will that she supported.[18] But this altered perspective has little bearing on the basic quality of Enders's duty: no matter what set of beneficiaries she purported to serve, Alaska's definition of good faith required Enders to act out of a genuine concern for Kottke's true will as she honestly perceived it, unambiguously precluding her from suing out of personal interest or for ulterior motives.[19]

Yet here, the superior court *explicitly* found that Enders acted for her own self-interest, motivated by her overriding hostility toward Parker. The court denied Enders's application after explicitly finding

- "Ms. Enders'[s] case was a contest *for her own personal benefit*";
- "The real impetus behind the litigation is the Enders[ ] family['s] *personal animosity and disdain* for Connie Parker"; and
- "This immense distaste for Ms. Parker *has propelled Ms. Enders to drain Mr. Kottke's modest estate* through litigation[.]"[20]

These are clear, unequivocal, and explicit statements of the superior court's considered view that Enders's action was motivated by

spite and that she prosecuted her claim against Parker for the purpose of draining the estate through litigation—not to secure the estate's benefit for individuals who Enders believed were Kottke's rightful successors, and not because Enders had any genuine concern for Kottke's true will.[21] The superior court's findings leave no doubt concerning its view of this issue.

Because a needless remand for ritualistic incantation of the words "bad faith" will only invite another round of appeal, which, in turn, will almost certainly seal Enders's victory in her efforts to drain Kottke's estate, I dissent.

---

16. AS 13.36.245 defines the duty of loyalty, stating: "A trustee shall invest and manage the trust assets solely in the interest of the beneficiaries." AS 13.36.250 governs the duty of impartiality: "If a trust has two or more beneficiaries, the trustee shall act impartially in investing and managing the trust assets, taking into account any differing interests of the beneficiaries."

17. AS 13.36.245; AS 13.36.250.

18. Op. on Reh'g at 16–17.

19. As the commentary to the Uniform Probate Code makes clear, "Litigation prosecuted by a

personal representative for the primary purpose of enhancing his prospects for compensation would not be in good faith." Unif. Probate Code § 3–720 cmt., 8 U.L.A. 184 (1998). *See, e.g., Oliver v. City of Larimore,* 540 N.W.2d 630, 634 (N.D.1995).

20. Emphasis added.

21. As noted above, the superior court's findings are amply supported by the record, as well as by the superior court's dispositive findings on the merits of the will contest.